**STATE of Missouri, Respondent,**

v.

**Malcolm JACKSON, Appellant.**

**No. 52156.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1967.

Donald Gunn, Jr., James F. Gunn, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, William A. R. Dalton, Special Asst. Atty. Gen., Springfield, for respondent.

PRITCHARD, Commissioner.

Appellant was convicted of commission of the crime of murder in the first degree by

the verdict of a jury. Judgment was entered and a sentence of life imprisonment was imposed in accordance with the verdict. Appellant does not here question the sufficiency of the evidence to sustain his conviction. The facts relevant to the points upon which appellant seeks reversal of the judgment will be stated in connection therewith.

Appellant's Point I is: "The trial court abused its discretion when it overruled defendant's Motion for a New Trial since bias and prejudice may be inferred from a juror's concealment of information touching on his qualification as a juror."

On voir dire examination of the jury panel counsel for the state asked: "Have any of you for any reason ever had to take the witness stand? Possibly you might have been a victim of a crime, or maybe you have been called in by the State." Venireman Spatny told that he was called in an industrial accident case before the Industrial Commission, but, because he was a witness, he had no feelings one way or the other (in this case); venireman Holmes had no particular feeling that would prevent her from sitting as a juror; venireman Moore had no unpleasantry attached to his experience of being arrested for hit and run, "thrown out of court" a "lot of years ago"; venireman Auberry stated he was able to give appellant a fair trial despite having been a witness for the state, and the victim, in a case of grand larceny; veniremen Gravatt and Brooks had testified in civil cases, had no feelings about it. Counsel for the state wound up his examination by asking: "Now, let me ask this: is there anyone who for any reason at all thinks they could not sit and give the defendant and the State a fair and impartial trial in this particular case? (No response.)"

Counsel for appellant asked venireman Mrs. Dorothy Schlatman (who sat as a juror during the entire trial): "Mrs. Schlatman, if they don't prove the charge as stated in the indictment, would you have any—would there be any reason why you couldn't bring back a verdict of acquittal? A. No."

On presentation of evidence in appellant's motion for new trial, Mrs. Schlatman testified:

"Q Now, do you recall that day, December 6th, various questions being propounded to you by both counsel for the State of Missouri and myself?

A Yes, sir.

Q . If I recall correctly, you were on the first panel. Is that correct. A. Yes.

Q Do you remember Mr. MacDonald asking this question of that particular panel: 'Possibly you may have been a victim of a crime or maybe you have been called in by the State.' Do you remember that question being propounded?

A I don't remember any specific question.

Q You don't remember that particular question?

A No, I don't.

Q That doesn't mean it wasn't asked?

A That is true.

Q Now, Mrs. Schlatman, I want you to recall back about nine or ten years ago. Were you the victim of a crime?

A Yes, sir.

Q When was that?

A It was about August or September 1955.

Q Mrs. Schlatman, let me warn you: this had better be absolutely borne out by the records of the police department and the circuit attorney's office.

A Yes, sir.

Q That was about 1955 or so?

A Yes, sir.

Q Can you tell the Court what happened at that time?

A Well, I was working at the K-Z Corporation. I was working on the midnight shift, so I had walked down to catch a bus sometime between eleven and twelve. I don't remember the time of the bus, but on my way to the bus—shall I tell you the streets?

Q Tell the whole thing.

A I was walking north on Twentieth Street and right at Wright Street there is a filling station and it faces North Florissant; the back of it is on Twentieth Street, because there is a wedge there. As I was even with the back of this filling station a man came around the corner of the filling station and started walking towards me. I didn't pay too much attention to him, because he was just coming up the block. When he got even with me—I was carrying an envelope-style purse and my lunch. He just reached over when he was even with me and grabbed my purse and ran. When he did, he ran south on Twentieth Street. I turned around and I started to holler, 'Stop thief!' When he got across the street, on Wright Street, there was a lady—she told me later that she had gotten off the Natural Bridge bus and he grabbed her purse. She had it hooked over her arm, so he pulled her to the sidewalk and the strap broke. Then he kept running. I ran over immediately to see if she was hurt, but she wasn't; she was skinned; her knee or something was skinned a little or her arm—I don't remember. She wasn't injured badly. She only lived a block from where this happened. We walked together to her house and called the police at the Fifth District. They came to her house. I don't remember her name; I think it was something like Jablonski; it was a Polich name.

So then the police came and questioned us both and took me to work. Later

that night they came to work and picked me up, because two hours later I started getting real nervous. I didn't feel like I could finish the night.

Then about a month later the police came and took me down to the Fifth District Station and they had a fellow they put behind a screen or something and they asked me to view him to see if he was the man that had grabbed my purse. He didn't fit the description at all for me, so I told them no. That was all there was ever to it.

Q. There was a police report made of that particular incident?

A Yes, sir.

MR. GUNN: I have no further questions at this time.

### CROSS EXAMINATION

By Mr. MacDonald:

Q I believe you indicated that you don't recall being asked this question as a juror?

A I don't remember just that particular question. I know we were questioned a lot.

Q If you were questioned on this point —suppose you did recall now being questioned, just for supposition sake, did you recall anything at the time you were chosen as a juror regarding the set of facts or the incident which you just explained?

MR. GUNN: Just a minute. Your Honor, I am going to object to that. I want to make objection on the ground that anything that she says now is mere supposition regarding anything that happened during the course of the trial. The question now is whether or not this juror would have been chosen as a juror by both counsel if they had known of this incident. I am going to object to any question which would be based purely on supposition as to anything that she might

have done or could have done or could not have done.

THE COURT: I will overrule it.

A No, sir. I don't remember; I don't recall.

Q In other words, at any time when you were asked the question or the question was propounded to your fellow jurors on the panel, did you ever at any time recall this incident which you just told Mr. Gunn about?

A No, sir.

"MR. MacDONALD: I have no further questions."

■ Without a doubt, and as stated by appellant, it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him so his qualifications may be determined and so that challenges may be intelligently exercised. He cites Beggs v. Universal C.I.T. Corporation, Mo., 387 S. W.2d 499. That case was one for actual and punitive damages for defendant's alleged unlawful taking possession of and the towing of a truck (tractor) in a manner that caused it to be damaged. It states the general rule as set forth, supra, by appellant, but goes on to say, loc. cit. 387 S.W. 2d 503, " '[A] juror's intentional concealment of a material fact may require the granting of a new trial. Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264. For bias and prejudice on the part of a juror may be inferred from his *intentional* concealment of such information. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278. * * * In the final analysis, therefore, the question of what result should follow the failure of a juror to correctly answer a question touching his qualifications depends upon whether or not he was guilty of an *intentional* concealment. Primarily, the determination of that question must be left to the sound discretion of the trial court. Reich v. Thompson, 346 Mo. 577, 142 S.W.

2d 486, 129 A.L.R. 795.' " (Italics here added.) The defendant in Beggs was a finance company, and the voir dire question was whether venireman Holder had trouble with a finance company, to which he answered "No." In truth, he had been adversely involved with five creditors who had judgments, two of them being finance companies. That fact, plus two other jurors failing to answer questions along the same line, caused this court to hold that there was wilful and intentional withholding of information which should have been disclosed on voir dire examination, that the defendant sustained prejudice in that it did not have a trial before a fair and impartial jury of twelve persons, and the trial court abused its discretion in overruling the motion for new trial. In this case, there is no evidence that Mrs. Schlatman *intentionally* withheld her previous experience (9 years earlier) with a purse snatcher and with the police in connection with that incident. On the post-trial hearing she testified that she remembered various questions being asked her, but not any specific question: "I know we were questioned a lot." She did not remember the purse snatching incident or ensuing incidents at the time she was questioned. In view of the nature of the state's voir dire question, "Have any of you for any reason ever had to take the witness stand?" and the answers to questions by other veniremen, it is clear that each, including Mrs. Schlatman, had in mind, with reference to the question, that it related to being a witness in a case being tried as the victim of a crime and being called in by the state. In the circumstance here presented, Mrs. Schlatman's failure to remember the 1955 purse snatching crime, and its later investigation, is not intentional and it may not legitimately be so inferred. There was no wilful withholding of vital information by her to the prejudice of appellant. She stated, in answer to final questioning by counsel for the state, that she knew of no reason why she could not bring back a verdict of acquittal should the state not prove the charge as stated in the indictment. State v. Hermann, Mo., 283

S.W.2d 617 (which involved absolute disqualification of the venireman who had been convicted of a crime), is not in point with the facts here. Nor are other cases cited by appellant, Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711 (where person not drawn to serve on the jury impersonated the one who had been drawn and gave false answers to voir dire examination thereby practicing fraud upon the court and parties as a matter of law); Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795 (juror's false answer when he was asked whether he or his family had been involved in a similar lawsuit); Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459 (prospective juror failed to reveal he had a claim against the defendant street car company in response to direct examination on that subject); and others of similar import, Brady v. Black and White Cab Company, Mo.App., 357 S.W.2d 720; Girratono v. Kansas City Public Service Company (cited in Beggs, supra); and Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116 S.W.2d 27. "An unintentional failure to disclose information as to matters not connected with the case does not, of itself, show prejudice on the part of the juror." Derr v. St. Louis Public Service Company, Mo.App., 399 S.W.2d 241, 244 [5, 6], and cases cited. There is no manifest prejudice on the part of Mrs. Schlatman in failing to answer the voir dire question. The trial court did not abuse its discretion in refusing to grant a new trial on this point. It is overruled.

■ Point II of appellant is that the trial court committed reversible error in its remarks from the bench. It appears from the record that after the last panel of veniremen had been examined, but before the selection of the twelve jurors to hear the case had been made, the trial court made a statement to the jurors regarding the need for more jurors, which statement was not reported by the official Court Reporter. Then the following occurred:

"MR. GUNN: Your Honor, in the Court's statement to the panel just now, which I think were wellfounded, I would ask for a mistrial on the ground that there was one statement I think was highly prejudicial to the defendant and that was when the Court said you were talking about civil jurors or civil juries and that 'God forbid' they would be in a criminal case. I would say that was prejudicial to the defendant and ask a mistrial be declared.

THE COURT: Motion for mistrial will be denied."

The foregoing is all that appears in the transcript of the record. We do not know the context in which the claimed prejudicial remark was made by the court. There is no way of knowing precisely to what it refers other than the fact that the court was talking to the panel about civil jurors or civil juries, as stated in the objection made by counsel for appellant. The request for mistrial was then denied, and as the matter was raised in the motion for new trial the trial court must have considered it. We cannot hold that there was prejudicial error committed against appellant upon this fragmentary record. The remark does not rise to the stature of the clearly coercive and prejudicial remarks urging the jury to reach a verdict as is found in State v. Keller, Mo., 344 S.W.2d 65, 68. We are in no better position than counsel for appellant who states in his brief that he "certainly does not completely understand the meaning of the trial judge's 'God forbid,'" but we cannot agree with counsel's further statement, "and such lack of understanding on his part necessitates the more than possible conclusion that the remark was magnified and misconstrued by the jurors." There is not enough here to reach any conclusion, and this situation is comparable to that where an assignment of error respecting argument is impossible of review where the argument is not included in the transcript of the record. State v. Smith, Mo., 395 S.W.2d 200, 204 [6].

Appellant claims prejudicial error in the trial court's remarks made during the direct examination of Thedall Doss, a witness for the state, who testified that he saw defendant at a fish place after the time set for the commission of the murder:

"Q Did you have a fish sandwich there?

A No.

Q What did you do there, if anything?

A Just walked on past on my way home.

Q Did you go home? Did you leave that place and go home?

A Yes.

Q Did you leave the house at all?

A Any more that night?

Q Yes.

MR. GUNN: I object to that as being irrelevant and immaterial.

THE COURT: I don't know what the purpose is.

MR. GUNN: It has nothing to do with the issues in this case.

THE COURT: *Well, it can't hurt you then.*" (Emphasis added.)

Appellant says the court's remark was a misstatement of the law and that he was materially prejudiced. He says, "The statement by the trial judge implanted in the mind of the jury that any objection based on materiality and relevancy was groundless since such testimony would not injure the defendant anyway. Such is not the case; many times evidence not germane to the issues in a trial are very prejudicial." Although it would obviously be better to rule on the objection without the remark, we do not perceive any prejudice, and appellant does not point to any harmful effect of the remark, the import of which was merely to overrule the objection. Furthermore, the allegation of error in the motion for new trial (Paragraph 10) is based upon the *inadmissibility* of the evidence as being "immaterial, irrelevant and having nothing to do with the issues of the case." Nothing is there said about any prejudicial effect of the court's remark and therefore that is not preserved for review. Point II is overruled.

Point III: Appellant says that the court erred in refusing to allow him to cross-examine and impeach witnesses Thedall Doss and Lynn Murphy as to prior inconsistent statements.

On direct examination Doss testified he knew appellant's parents and denied that he ever told them or anybody in appellant's house, or Mr. Gunn, that he couldn't say that appellant was there at the party that night (the night of the shooting). On cross-examination, Doss testified that he had a conversation with Mr. and Mrs. Bracken in which he might have told them that Malcolm (appellant) didn't do this (the homicide). He was then asked by Mr. Gunn if he recalled Mr. Gunn calling him last Saturday. At a conference outside the hearing of the jury, counsel stated, by way of offer of proof, that he had a conversation with the witness Saturday in which he told him that Malcolm Jackson didn't have anything to do with the murder. The state objected on the grounds that the offer of proof called for a conclusion on the part of the witness and that it was hearsay, which objection was sustained. It is noted that Doss did not witness the homicide, but merely heard a shot which he first thought was the backfire of a car when he was to the rear of the building. At that time he thought appellant and one Scott were still at the party in the building. The offer of proof goes to the ultimate fact: Did appellant commit the homicide? The exclusion of the offer was proper. It called for Doss' conclusion that appellant did not commit the murder, without any facts in evidence, or a foundation being laid, as a basis for such a conclusion. "Other questions disallowed [on

cross-examination] are those which are argumentative or speculative, or those which make an assertion of facts not in evidence, or for which no foundation has been laid, or which call for a conclusion or opinion of a witness not competent to give opinion evidence * * * or questions calling for answers which invade the province of the jury or court." [Our brackets.] 98 C.J.S. Witnesses § 411, p. 212. See also State v. Carroll, Mo., 188 S.W.2d 22, 24, a case involving opinions of witnesses as to the character of defendant. Here, there was not a prior statement inconsistent with that tendered in the offer of proof. Doss merely denied that he couldn't say that appellant was at the scene. He did not say that appellant did the shooting, the converse of which was sought in the offer of proof. The same ruling must apply to the offer of proof as to witness Murphy, who did not testify that appellant was the one who committed the crime, but only that he saw appellant at the party, saw a flash come from a pistol in appellant's hands, remembered the positions of the boys gathered closely at the time of the shooting, saw appellant leave, but that he never did tell anyone that he didn't see appellant at the party that evening. Again, appellant sought to elicit a conclusion from Murphy that in a conversation with appellant's father he said, "Did you ever tell him that Malcolm didn't do this crime?" Point III is overruled.

■ Appellant says it was prejudicial error to permit the testimony of witness Troupe, a member of the Homicide Division of the Metropolitan Police Department, to be given in rebuttal. Nothing was elicited that rebutted anything, but on the other hand, other than identification of appellant as Malcolm Jackson, nothing damaging was testified to by witness Troupe. He testified that he did not obtain any statement from appellant regarding the shooting. We see no prejudice to appellant from the mere fact that Troupe was a member of the Homicide Division. There was nothing to object to, nothing to occasion striking the testimony, and Point IV is overruled.

■ Point V is that the court erred in not permitting appellant to introduce testimony of his parents, Mr. and Mrs. Bracken, to impeach a former witness (Thedall Doss). As above set forth, Doss testified that he did not tell appellant's parents or anybody in his house that he couldn't say that he (appellant) was there at the party that night. Appellant's offer of proof was that the Brackens would testify that on two occasions they had a conversation with Thedall Doss and in both "they said that the defendant had nothing at all to do with this crime, and this is contrary to what they testified to in the case." The matters offered, as stated by counsel to the court, do not impeach the only matter testified to by Doss: that he did not tell them that he couldn't say that appellant was there at the house that night. It was not error to reject the offer. The offer was of new matter, about which Doss did not testify. Point V is overruled.

We find no error in the matters specified for review under Criminal Rule 28.02, V.A. M.R.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.