STATE of Missouri, Respondent,

v.

Ron COY, Appellant.

No. KCD28525.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

Theodore M. Kranitz, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

Defendant appeals from a conviction of felonious assault with malice, with intent to kill, and a consequent sentence of 8 years imprisonment. In support, he assigns ten points of error. We reverse on Point I, relating to juror Walker's failure to disclose certain pertinent facts on voir dire examination concerning his relations with the Sheriff and other law enforcement officials.

Because of the narrow basis for reversal, only the facts relevant to this issue need be outlined. As part of the voir dire examination, defense counsel asked numerous questions. Among those were the following:

"Testimony for the State will come in part from law enforcement officers. Do any of you believe or harbor any feelings that the testimony of a law enforcement officer is entitled, or crime laboratory agent for that matter, is entitled to more weight or is any more reliable simply because he is a police officer or highway patrolman or sheriff or a crime laboratory agent? In other words, do you feel by the badge on the chest the man is more reliable simply because he has got the badge there and the State behind him? * * * "

A little later, this question was asked:

"Do any of you know why you could not be a fair and impartial juror in this case for any reason I haven't touched on yet?"

Counsel then commenced questions pertaining to the various witnesses expected to testify for the prosecution. In the course of that interrogation, counsel asked the following:

"Now, we have Sheriff John Middleton and Deputy Sheriff Whittington and Whan. * * * By reason of the fact Mr. Middleton is your elected sheriff and presumably all or most of you voted for him would that fact he is sitting here in the witness box make you tend to give him any more credence simply because he is your elected sheriff up here, or would you evaluate his testimony just as impar-tially as you evaluate everyone else's, is this right?

"And that's also so of the two deputies?"

After going through the list of the witnesses, defense counsel followed up with this question: "Any of you a close friend, personal friend, business, neighbor of any of those people I have just read and identified?" And he asked, "Has any of you ever been actively engaged in law enforcement work?" Counsel then concluded his interrogation addressed to the whole panel with the following general question:

"Does any of you know of any reason upon which I may not have touched, anything I may have omitted, I am not perfect either, I have memory lapses and so forth, any of you know of any reason I might not have touched upon that would make it difficult, and you are the only people who would know, that would make it difficult for you to sit and render a fair and impartial verdict in this case?"

To none of these questions did juror Walker respond affirmatively to show any special relationship to the Sheriff or other law enforcement officers.

After the conclusion of the trial, defense counsel learned for the first time that Walker had been called by the Sheriff the night of the alleged crime for the purpose of towing in defendant's vehicle to Walker's garage. An affidavit to this effect was secured from Walker and submitted as an exhibit to defendant's motion for new trial. On the basis of that information, defendant argued on his motion for new trial and continues to argue in this court that, "[i]t is not at all unreasonable to presume, and indeed it is even probable that Walker and the officer discussed the incident, the progress of the investigation, and certainly the reason Walker was authorized lawfully to impound the vehicle." Defendant's argument goes on that had the facts been known, Walker would have been challenged for cause and if that challenge had been disallowed then he would have been peremptorily challenged.

Responding to the affidavit by Walker attached to defendant's motion for new trial, the prosecutor obtained another, further affidavit from Walker which he then submitted to the trial court along with suggestions in opposition to defendant's motion for a new trial. This second affidavit details how Walker was first called by the Maryville Police dispatcher, how he went out and met with the Sheriff or his deputy and received instructions on towing the car to Maryville, that he did not know the reason why the car was impounded, and that he never discussed prior to trial anything about the case with the Prosecuting Attorney, Sheriff, Deputy Sheriff, Highway Patrol, Police or any other law enforcement official. However, the affidavit further contains a significant additional statement which opens up an even more important aspect of this situation. The additional statement in question reads: "I frequently tow in impounded vehicles for the police, Sheriff or Highway Patrol."

That part of Walker's second affidavit which swears that he did not discuss the case with any law enforcement official prior to trial adequately answers the specific question which defendant raised in his motion for new trial and serves to still the suspicion above quoted from the brief filed by defendant in this court. Nevertheless, the statement by Walker that he frequently towed in impounded vehicles clearly reflects that he did this as part of his regular garage business, and so now discloses a continuing business relationship which he should have made known at the time of the voir dire examination.

■ The most fundamental principles of American criminal law guarantee to the defendant a trial by a fair and impartial jury. To give that guarantee meaning, the defendant is permitted to interrogate the prospective jurymen in order to reach his own conclusion as to whom he wants to sit or not sit, and the law accords him not only the right to challenge for cause but also to exercise a certain number of peremptory challenges at his own discretion. In order

to have a guide in making these choices, the defendant must have and is given the right to interrogate the prospective jurors by voir dire examination. The courts fully recognize that the effective exercise of these rights require that the veniremen answer fully and truthfully on the questions put to them. *State v. Jacckson,* 412 S.W.2d 428, 432 (Mo.1967); *Beggs v. Universal C. I. T. Credit Corporation,* 387 S.W.2d 499 (Mo. banc 1965).

■ Because of the foregoing background reasons, the intentional concealment by a prospective juror of facts on voir dire will give rise to an inference of bias and prejudice thereby requiring a new trial. *State v. Jackson, supra; Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co.,* 446 S.W.2d 623, 626 (Mo.1969); *State v. Hermann,* 283 S.W.2d 617, 619 (Mo.1955). In addition to the implication of bias and prejudice from the failure to answer, that silence is prejudicial because the defendant is thereby deprived of an opportunity to challenge for cause or to exercise a peremptory challenge. *Rodenhauser v. Lashly,* 481 S.W.2d 231, 234 (Mo.1972); *Snavely v. Kansas City Terminal Railway Co.,* 461 S.W.2d 1, 4 (Mo.1970); *Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co., supra; State v. Hermann, supra.* It has been held that these rules apply in a civil case to every one of the jurors even though only nine jurors are necessary to a civil verdict. *Beggs v. Universal C. I. T. Credit Corporation, supra; Triplett v. St. Louis Public Service Co.,* 343 S.W.2d 670 (Mo.App.1961). If that be true in a civil case, how much more it must be true in a criminal case where a unanimous verdict of all 12 jurors is necessary.

■ The questions which were asked on voir dire by defense counsel were amply sufficient to put Walker on notice that he should answer and make known his on-going continuous business relationship with the Sheriff's office and with other law enforcement officials. Counsel had advised the panel that the Sheriff and his two deputies were likely to be prosecution witnesses,

and inquiry had been made as to whether special credence would be given to them or other law enforcement officers. The veniremen had been asked specifically whether any of them were close friends or were social or business associates of the witnesses introduced, including the Sheriff and his deputies. They had been asked specifically whether any of them were engaged in law enforcement work. To top it all off, the veniremen were invited at an early point to volunteer any information which would prevent any of them from being a fair juror and still later they were again asked to volunteer any other reason that would make it difficult for any of them to sit and render a fair and impartial verdict.

In view of all of those questions, juror Walker simply had to know that defense counsel wanted to hear of any special relationship which he might have with the Sheriff's office which might possibly affect his vote as a juror. It was not necessary for this purpose that defense counsel pinpoint exactly the precise type of association which Walker in this case had with the prosecutor's office. As stated in *Toombs v. State*, 197 Tenn. 229, 270 S.W.2d 649 (1954), where the venire was asked generally to state any reasons why any of the veniremen could not give all sides a fair trial, it is not incumbent on the defendant to cover minutely all phases of the particular subject by a long series of specific questions, " * * but [it] is sufficient to ask such questions as indicate to the mind of a fair and reasonable man what information the examining counsel seeks to elicit" (citing 39 Am.Jur. § 44, p. 65). So also in *State v. Thompson*, 24 Utah 314, 67 P. 789 (1902) a venireman answered negatively to a general question whether there was any reason why he should not sit as a member of the jury. In fact, he was a director and stockholder of the firm which had been burglarized. In holding that a new trial should have been granted because of the failure to make disclosure, the Utah Supreme Court held that the juror's "answer to the question asked him by defendant's attorney was well calculated to mislead the defendant and set his

mind at rest in regard to the impartiality of the juror."

A leading case on this subject as to the necessity of a prospective juror to answer even to a general question concerning any reason why he should not sit is *Pearcy v. Michigan Mutual Life Ins. Co.*, 111 Ind. 59, 12 N.E. 98 (1887) where it was held: "It was not incumbent upon the appellee to minutely cover, by a long series of specific questions, all phases of the subject, but it was enough to ask such a question as would indicate to the mind of a fair and reasonable man what information the examining counsel sought to elicit. * * * The authorities support our conclusion that if the general question fairly arouses the juror's attention, and directs it to the information desired, it is enough, without specific questions covering minute phases of the subject." The *Pearcy* case has been cited, quoted and followed in Missouri. *Triplett v. St. Louis Public Service Co., supra; Gibney v. St. Louis Transit Co.*, 204 Mo. 704, 103 S.W. 43 (1907). See also *Bass v. Durand*, 345 Mo. 870, 136 S.W.2d 988 (1940).

The prejudice to defendant of Walker's failure to answer is free from doubt. It is clear beyond question from the questions asked on voir dire that defendant's counsel was anxious to know of any special relationship between any prospective juror and the law enforcement officers, particularly the Sheriff and his deputies. If Walker had volunteered the information which finally came out in his post-trial affidavits, that information would certainly have influenced the exercise of peremptory strikes. It matters little how compelling the information may have seemed to Walker as a ground for a strike; the defendant is entitled to all the knowledge which he seeks (once it is passed by the court as a proper question) in order to exercise intelligently his right of peremptory challenge according to his own rights. The prospective juror cannot be permitted to become the final arbiter of his own qualifications by withholding pertinent information.

Moreover, it could hardly be said that defendant would be unjustified in objecting

to Walker as a juror had this information been in hand at the time of choosing the jury. For example in *Tate v. People,* 125 Colo. 527, 247 P.2d 665 (1952) the challenged juror was a special deputy sheriff who was not regularly employed on a salary but who performed special services at the request of the Sheriff. In that case the Colorado Supreme Court stated: "In this case the juror, as a deputy sheriff, would be presumed to be under ordinary allegiance to his superior, the sheriff, who was the prosecuting witness in the case and his remuneration as deputy sheriff was wholly dependent upon such services as he might perform at the request of his superior. * * * Where other law-enforcement officials, including the sheriff, were material witnesses in the case, the disqualification of this juror was not even a debatable question." Along the same line, *State v. Golubski,* 45 S.W.2d 873 (Mo.App.1932) held that a deputy sheriff should have been stricken for partiality where his superior officer, the Sheriff, was the chief witness for the State. In this connection the court remarked that "[h]is loyalty to his chief and fellow deputies would certainly have its weight."

The prejudice in this case from Walker sitting as a juror was exacerbated by certain newspaper publicity which was read by Walker the evening before the trial began. After the voir dire examination was completed late in the afternoon and while the opposing counsel were considering their peremptory challenges, the court excused the jurors overnight with instructions that those who were chosen for jury service would be advised to report the following morning. That evening the daily newspaper carried an article stating that the trial of this defendant had begun. The charge against him was described as "attempted murder." That of course constituted a misstatement. The article also reported, "Coy already has been the subject of numerous court proceedings, *most* involving the reduction of bail." (Emphasis added). The portion of the article last quoted could have been interpreted as meaning that Coy had been the subject of various criminal charges other than and in addition to the present proceeding. When court resumed the following morning, defense counsel called the court's attention to the newspaper article and the court inquired of the jury members whether any of them had seen the article in question. Walker answered in the affirmative.

This newspaper article under other circumstances might be considered as relatively innocuous. However in the present case the misrepresentation and possible innuendo of the article came to a mind with special sensitive receptivity when read by juror Walker. He already had a degree of identification with law enforcement by reason of his regular employment in towing vehicles for law enforcement officers, and he had been made aware that law enforcement officers would be witnesses for the prosecution in this case. The newspaper article had a likelihood of creating the impression that this particular prosecution was an important one on which the eyes of the community were focused and therefore one which the prosecuting attorney and police officers were particularly anxious to see succeed. Emphasis on this point, however, is unnecessary since the failure of Walker to disclose his business relationship with the Sheriff's office in and of itself constitutes a sufficient reason for requiring a new trial.

The other points of error raised by defendant need not be considered since on retrial they either will not recur, or if they do, that will be in the context of different trial circumstances.

Because of the non-disclosure by juror Walker, the judgment of conviction is reversed and this cause is remanded for a new trial.

All concur.