**STATE of Missouri, Respondent,**

v.

**Stanley STILLINGS, Appellant.**

**Stanley STILLINGS, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 17728, 18818.

Missouri Court of Appeals, Southern District, Division Two.

July 18, 1994.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 9, 1994.

Donald R. Cooley, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Watson, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Stanley Stillings, was tried by jury for murder in the second degree, § 565.-021,[1] and armed criminal action, § 571.015. The jury found him guilty of voluntary manslaughter, § 565.023, and armed criminal action, assessing sentences of 15 years' imprisonment for each.

The trial court entered judgment per the verdicts, ordering the sentences to run consecutively. Appellant brings appeal 17728 from that judgment.

While appeal 17728 was pending, Appellant commenced an action per Rule 29.15[2] to vacate the judgment. After an evidentiary hearing, the motion court entered an order denying relief. Appellant brings appeal 18818 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 17728

Appellant's sole point relied on avers he was denied a trial by an impartial jury "due to the intentional withholding of opinions of bias toward [Appellant] by jurors who were picked to try the case and due further to misconduct by jurors during deliberation."

Although Appellant does not challenge the sufficiency of the evidence to support the verdicts, a brief account of it is helpful in addressing the claim of error. Viewing the evidence and all of its reasonable inferences in the light most favorable to the verdicts, and disregarding any evidence or inferences to the contrary, *State v. Morovitz*, 867 S.W.2d 506, 508[3] (Mo. banc 1993), the evidence establishes the following facts.

Around 2:00 a.m., June 30, 1990, several people were on the "city square" in Ava. Two fights, each involving two antagonists, occurred. According to Appellant and his witness, Randy Curtis, Appellant attempted to break up one of the fights.

Two State's witnesses testified that Kevin Vaverka swung at Appellant, but missed. Appellant retreated, pursued by Vaverka.

Vaverka attempted to kick Appellant, then ceased the pursuit.

Appellant went to his car. State's witness Herschel Graham testified Appellant reached into the car through a back window, pulled something out, then put it back. Shortly thereafter, according to Graham, Vaverka started toward Appellant's car.

Graham and another State's witness, Jimmy Lee Thornsberry, saw Appellant remove a shotgun from his car. Thornsberry testified, "I hollered and told Kevin he had a gun out."

As Vaverka approached, Appellant took a few steps backward. Thornsberry and another State's witness, Carla Walker, testified Vaverka reached for the gun. It discharged, inflicting a wound to Vaverka's head. Vaverka fell, face down.

Ava police officer Gary Koop arrived at the scene at 2:39 a.m. He observed Vaverka lying in the street. Vaverka was dead.

At trial, Appellant maintained he was fearful Vaverka was going to attack him. Appellant's testimony:

"... he was reaching for me with ... at least ... one hand, I'm not positive if both of them but at least one hand.

Q And what happened then?

A Evidently I fired the gun, I do not remember what happened...."

In final argument, Appellant's lawyer insisted Appellant should be acquitted because he acted in self-defense.

Appellant's motion for new trial averred that a member of the jury, Vicki Yeary, was prejudiced against him and failed to disclose it during voir dire. Specifically, the motion pled that before trial, Yeary said if she were selected for the jury, she would vote to convict Appellant because he was involved in "dealing drugs" in the Ava community. The motion further pled Appellant and his lawyer did not learn of this until after trial.

Attached to the motion was an affidavit of a 19–year–old neighbor of Yeary. According

---

**1.** References to statutes are to RSMo 1986.

**2.** Rule references are to Missouri Rules of Criminal Procedure (1992) except where otherwise indicated.

to the affidavit, a member of Yeary's family told the affiant the day before trial that if Yeary were chosen for the jury, she would vote to convict Appellant because of rumors that he was involved in dealing drugs. The affidavit further stated that the affiant did not make that information available to Appellant or his lawyer until after trial.

■ At the hearing on the motion for new trial, Appellant presented testimony by Joanie Jenkins (not the affiant mentioned in the preceding paragraph). Jenkins testified she was summoned as a potential juror for Appellant's trial, along with Yeary. Jenkins was acquainted with Yeary; they work for the same employer.

Jenkins recounted a conversation with Yeary in the courthouse hallway on the morning of trial, just before voir dire began. Jenkins' testimony:

"Q ... did Mrs. Yeary make any statements to you about the Defendant's trial here or ... whether or not she thought that he was guilty?

A Yes.

Q What did she say to you, as best you can remember?

A She just made the comment, more or less, that she thought that he was guilty, that he had done it and more or less that's all there was to it.

Q Did she make any statements or infer anything to you about the fact that she wondered why we were having a trial or anything?

A Yes.

Q And ... did she say words to that effect?

A Words to that effect, yes.

Q Okay. Do you remember specifically what she said word for word?

A No, I couldn't tell you word for word.

. . . .

Q Was ... it clear to you that she was indicating to you that she thought he was guilty at that point?

A Yes, very clear."

Jenkins was excused from the venire when she revealed she was on the city square at the time of the shooting. Yeary said nothing during voir dire and was chosen as a juror.

Appellant points out that during voir dire, the trial court asked whether any member of the venire had any opinion about the case. Later during voir dire, the prosecutor stated the objective was to find twelve people who could be fair to Appellant and the State. The prosecutor asked whether the venire members understood they must set aside anything they had heard about the case and make their decision solely on the evidence in the courtroom.

Appellant's lawyer requested the venire members to assume they were on the jury and had not heard any evidence, then asked whether he could assume everyone would vote not guilty. Appellant's lawyer also asked whether any member of the venire would be influenced by anything he or she had heard or thought they knew about the case.

Near the end of voir dire, the trial court emphasized the jurors were to base their decision on what they heard under oath at trial.

Appellant maintains Yeary intentionally concealed her bias and prejudice against him by remaining silent during the above questions and admonitions. Appellant cites *State v. Coy*, 550 S.W.2d 940, 942[2] (Mo.App.1977), which holds that intentional concealment by a prospective juror of facts on voir dire will give rise to an inference of bias and prejudice, thereby requiring a new trial.

In *Coy*, the accused pointed out during voir dire that the sheriff would be a prosecution witness, and inquired whether anyone would give a law enforcement officer's testimony greater credibility than that of other witnesses. The accused also asked whether anyone was a "personal friend, business, neighbor" of any prosecution witness, whether anyone was engaged in law enforcement work, and whether anyone knew of anything that would make it difficult for her or him to render a fair and impartial verdict.

After trial in *Coy*, the accused learned that one juror, Walker, had been called by the sheriff on the night of the crime to tow the

accused's vehicle to Walker's garage and impound it. Affidavits obtained from Walker revealed he did not know the reason the car was impounded, and never discussed anything about the case with the sheriff or other officials. However, Walker frequently towed impounded vehicles for law enforcement agencies. The appellate court held this disclosure showed a continuous business relationship which Walker should have revealed during voir dire. *Id.* at 942. The conviction was reversed and the case was remanded for a new trial.

Appellant also cites *State v. Jackson*, 412 S.W.2d 428 (Mo.1967). There, however, the Supreme Court of Missouri held the failure of a venire member to recall being the victim of a purse-snatching nine years before the accused's murder trial was not an intentional concealment, hence the trial court did not abuse its discretion in denying a new trial.

In considering Appellant's claim of error we note that during the hearing on the motion for new trial, juror Yeary was not called to testify and no affidavit from her was presented. That is in marked contrast to *Coy*, 550 S.W.2d 940 (two affidavits from the subject juror), and *Jackson*, 412 S.W.2d 428 (testimony by the subject juror). The *Jackson* procedure was followed in two other cases cited by Appellant, *State v. Endres*, 698 S.W.2d 591 (Mo.App.E.D.1985), and *State v. Martin*, 755 S.W.2d 337 (Mo.App.E.D.1988), where the subject jurors testified at the hearings on the motions for new trial.

Here, the trial court did not have a response from juror Yeary to Jenkins' testimony.[3]

The trial court was not obliged to believe Jenkins' testimony. *State v. Duckett*, 849 S.W.2d 300, 305 (Mo.App.S.D.1993). The truth or falsity of that testimony was for the

trial court to determine in the exercise of sound judicial discretion. *Id.; State v. Palmer*, 726 S.W.2d 810, 812 (Mo.App.S.D. 1987); *State v. Galardo*, 654 S.W.2d 360, 362 (Mo.App.S.D.1983).

■ Even if the trial court found Jenkins' testimony credible, all it established was that Jenkins recalled Yeary saying she thought appellant was guilty, "that he had done it," and she wondered why there would be a trial. As the State points out, the venire was told during voir dire that self-defense would be an issue, thus the potential jurors could have inferred there was no dispute about whether Appellant shot Vaverka, but instead the case would hinge on whether Appellant did so in self-defense. Therefore, argues the State, Yeary's belief that Appellant was the shooter turned out to be correct, and had no bearing on the issue the jury was called upon to decide.

The State reminds us that prior knowledge about a case does not, per se, require that a potential juror be stricken when such knowledge does not preclude him or her from reaching a verdict based upon the evidence. *State v. Walton*, 796 S.W.2d 374, 378[11] (Mo. banc 1990). Consequently, argues the State, the trial court's denial of Appellant's motion for new trial was not an abuse of discretion.

■ The scope of our review of the trial court's ruling as to juror Yeary is clearly set forth in *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965):

"[T]he question of what result should follow the failure of a juror to correctly answer a question touching his qualifications depends upon whether or not he was guilty of an intentional concealment. Primarily, the determination of that question must be left to the sound discretion of the trial court. Nevertheless, the exercise of such

---

**3.** At the conclusion of the hearing on the motion for new trial, the prosecutor told the trial court there was a deposition of juror Yeary and a deposition of a member of her family in which each of them denied the averments in the affidavit of the teenage neighbor. We infer those depositions were taken after Appellant filed his motion for new trial (May 17, 1991) and before the hearing on it (August 14, 1991). Consequently, Yeary's deposition could not have responded to Jenkins' testimony. The prosecutor asked the

trial court to read the depositions. After denying the motion for new trial, the trial court said: "These two depositions that I read, why don't you mark them Court's Exhibit 1 and Court's Exhibit 2 so the Court of Appeals will be able to identify them." According to the transcript, the court reporter did so. Neither Appellant nor the State has filed the depositions with us, and the depositions are unmentioned in the briefs. We therefore have no way of knowing what the trial court learned from the depositions.

a discretion is subject to judicial review, and if an appellate court concludes from the record that an abuse of discretion unmistakably appears, it is its duty to reverse the ruling." [Citation omitted.]

On the record here, we cannot hold that an abuse of discretion unmistakably appears. As noted earlier, the trial court was not compelled to believe Jenkins' testimony, but even if the trial court did, the trial court could have reasonably concluded such testimony showed only that Yeary came to court believing Appellant fired the fatal shot. The venire members learned during voir dire that the identity of the shooter was not in issue. Accordingly, the trial court could have reasonably concluded that Yeary, upon learning she was correct in believing Appellant fired the fatal shot, had nothing to disclose, as she would have been revealing nothing other than what she had been told during voir dire. We find no abuse of discretion in the trial court's ruling that Yeary's silence during voir dire did not require a new trial.

■ As we understand the argument following Appellant's point relied on, Appellant does not assert he was entitled to a new trial by reason of the affidavit of Yeary's teenage neighbor. That may be because, absent a stipulation of the parties, there is no authority for treating an affidavit as evidence and determining issues therefrom. *State ex rel. O'Connell v. Crandall,* 562 S.W.2d 746, 749–50[6] n. 5 (Mo.App.1978); *Stanfill v. Stanfill,* 505 S.W.2d 438, 439[2] (Mo.App.1974). No such stipulation is shown here.

■ Furthermore, the affidavit did not set forth anything the affiant allegedly heard Yeary say. The affidavit set forth statements allegedly made to the affiant by a member of Yeary's family wherein the latter purported to quote Yeary. Had the affiant testified, his testimony could have been objected to as hearsay, i.e., testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant. *State v. Harris,* 620 S.W.2d 349, 355[13] (Mo. banc 1981). The affidavit of Yeary's teenage neighbor was not competent evidence of anything asserted

therein, hence it supplied no basis for a new trial.

■ One further item requires attention. In Appellant's point relied on and the argument following it, he asserts there was juror misconduct during deliberation in that some jurors made "adverse character allegations and allegations that [Appellant] was a drug dealer." Appellant emphasizes that no evidence of such conduct was presented at trial.

The claim of error in the preceding paragraph was not mentioned in Appellant's motion for new trial; consequently, it is not preserved for review. *State v. Peterson,* 518 S.W.2d 1, 3[2] (Mo.1974); *State v. Mayes,* 868 S.W.2d 541, 546[11] (Mo.App.W.D.1993). Furthermore, as explained hereunder, the claim would be futile even if preserved.

■ At the hearing on his motion for new trial, Appellant called as witnesses two members of the jury, Verl Smith and Lyndell Lakey. When Appellant undertook to question them about what occurred during the jury's deliberation, the prosecutor objected that such inquiries constituted an impermissible attempt to impeach the verdict.

The trial court sustained the objections, but allowed Appellant to make an offer of proof by questioning Smith and Lakey on the record, and by presenting affidavits of each of them.

The trial court ruled correctly in sustaining the prosecutor's objections. In *State v. Babb,* 680 S.W.2d 150, 152 (Mo. banc 1984), the court said:

"The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict."

*Babb* was followed in *State v. Kelly,* 851 S.W.2d 693 (Mo.App.E.D.1993), where the accused sought a new trial because the jury foreman brought a map into the jury room during deliberation. Affirming the trial court's denial of a new trial, the appellate court said:

"In Missouri state courts the rule against impeachment of verdicts prohibits questioning of jurors after they have given their verdict to determine if their deliberations were in fact prejudiced by the non-evidentiary material. This rule is interpreted to prohibit a juror from testifying to the facts of any misconduct."

*Id.* at 695–96[3] (citations omitted).

Appellant offered no evidence of juror misconduct during deliberation other than the testimony of jurors Smith and Lakey. Because Missouri law bars that testimony, there is no evidentiary support for the alleged juror misconduct.

Appellant's point relied on is denied, and the judgment is affirmed.

## Appeal 18818

Appellant's sole point relied on asserts he received ineffective assistance from the lawyer ("defense counsel") who represented him in the trial court. Appellant maintains defense counsel was derelict in:

(A) Failing to object to a motion in limine by the State;

(B) Failing to offer evidence of Vaverka's "prior similar violent acts";

(C) Failing to advise Appellant of a plea offer;

(D) Failing to subpoena, as a defense witness, the pathologist who performed the autopsy on Vaverka's body;

(E) Agreeing to dismiss Linda (Merritt) Curtis as a witness without Appellant's knowledge;

(F) Failing to call character witnesses for Appellant.

■ Regarding complaints "A" and "B," the record shows that the prosecutor filed a motion in limine praying the trial court to bar defense counsel from mentioning "specific acts of violence by the deceased, Kevin Vaverka, and limiting Defendant's inquiry concerning the reputation of the deceased until such time as evidence on self defense has been admitted." The trial court took up the motion just before voir dire. According to the transcript, defense counsel conceded

the motion was "well taken." The trial court granted the motion.

Appellant points out that in *State v. Waller*, 816 S.W.2d 212, 216[2] (Mo. banc 1991), the Supreme Court of Missouri held that where justification is an issue in a criminal case, the trial court may permit an accused to introduce evidence of the victim's prior specific acts of violence of which the accused had knowledge, provided such acts are reasonably related to the crime with which the accused is charged. Appellant maintains the failure of defense counsel to offer evidence of Vaverka's specific acts of violent conduct known by Appellant, coupled with defense counsel's acquiescence in the motion in limine, denied Appellant his constitutional right to effective assistance of counsel.

Appellant fails to mention that until *Waller*, the law in Missouri appeared in the following passage from *State v. Buckles*, 636 S.W.2d 914, 922[14] (Mo. banc 1982):

"On the issue of self-defense there can be no doubt of the rule that evidence of the deceased's reputation for turbulence and violence is admissible as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed; but such evidence must be proved by general reputation testimony, *not specific acts of violence,* and defendant must show he knew of such reputation when the issue is reasonable apprehension." (Emphasis added.)

*Waller* was decided September 10, 1991, four and a half months *after* Appellant's trial. *Buckles* was the law in Missouri when Appellant was tried. Consistent with *Buckles,* defense counsel presented testimony by Appellant and by a former county sheriff that Vaverka had a reputation of being "quite a fighter," that he was "very abusive to the people he was fighting," and that he was a "violent person."

To prevail on a claim of ineffective assistance of counsel, an accused must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the accused was prejudiced thereby. *Moore v. State,* 827 S.W.2d 213, 215[1] (Mo. banc 1992).

The motion court found defense counsel exercised the skill and diligence that a reasonably competent lawyer would have exercised. Our review of that finding is limited to a determination of whether it is clearly erroneous. Rule 29.15(j); *State v. Starks*, 856 S.W.2d 334, 336[1] (Mo. banc 1993).

Appellant's complaints "A" and "B" are governed by *Scott v. State*, 741 S.W.2d 692, 693 (Mo.App.W.D.1987), which holds:

"A change in the law 'does not render counsel ineffective in failing to predict the change and assert the theory of the change in the law in the face of settled authority.' *Bolder v. State*, 613 S.W.2d 196, 197[2] (Mo.App.1981). Rather, '[i]neffectiveness of counsel is measured upon the circumstances and the law at the time of trial,' and 'cannot be predicated on a failure to predict a change in the law.' *Id.* 'Counsel,' it has been said, 'need not be clairvoyant to be effective.' *Battle v. State*, 674 S.W.2d 179, 181[4] (Mo.App.1984)."

Because the conduct of defense counsel assailed by Appellant in complaints "A" and "B" was consistent with the law as it existed at the time of such conduct, the motion court's finding that such conduct was not ineffective assistance is not clearly erroneous. On the contrary, the finding is patently correct.

■ We next consider complaint "C." Pertinent to it, Appellant presented Souder Tate as a witness in the motion court. Tate was Prosecuting Attorney of Douglas County at the time of the shooting. His term of office expired December 31, 1990. By the time the case was tried (April 25, 1991), a new prosecutor had taken office.

Tate testified that before his term ended, he had a conversation with defense counsel about a plea agreement for Appellant. Tate recalled he offered to dismiss the armed criminal action charge if Appellant pled guilty to voluntary manslaughter. Additionally, Tate would make no recommendation on length of sentence or probation (a "blind plea" in Douglas County terminology). Tate added that he was aware the probation officer who would conduct the presentence investigation typically recommended ten years'

imprisonment in a "manslaughter-type case." Tate's testimony continued:

"Q. From the way that it's usually handled in this circuit ... when the prosecutor is silent, most generally ... the Court does whatever the presentence investigation reflects; is that correct?

A. That was my understanding.

. . . .

Q. So, you didn't feel like you had much to lose by staying silent; is that a fair statement as the prosecutor at that time representing the State?

A. Believe that would be a fair statement."

Asked whether defense counsel ever responded to the offer, Tate answered, "Not that I recall."

Defense counsel, presented as a witness by Appellant in the motion court, testified he and prosecutor Tate talked about a plea agreement "right after the preliminary [hearing]." Asked whether Tate ever offered to dismiss the armed criminal action charge and stand silent on sentence and probation if Appellant pled guilty to voluntary manslaughter, defense counsel responded he recalled no such offer but it was possible it could have been made. Asked whether he ever relayed such an offer to Appellant, defense counsel replied, "No."

Defense counsel did recall a discussion with Tate about "a five and five plea on the manslaughter and the armed criminal action." Defense counsel discussed it with Appellant. Defense counsel's testimony:

"Q. What was Mr. Stillings' response to that?

A. Well, he didn't want to plead to any time.

Q. To serving any time; is that what you mean?

A. Right."

Defense counsel added that in his opinion, the judge "would not consider probation" on a "blind plea."

Appellant has failed to explain how he was prejudiced by defense counsel's failure to tell him about the plea offer testified to by Tate. We infer Appellant expects we will assume

he would have accepted such an offer. There is, however, no evidence to support such an assumption.

In the reverse situation, where a prisoner after pleading guilty seeks postconviction relief on the ground that his plea resulted from ineffective assistance of counsel, the prisoner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Engelmann v. State,* 864 S.W.2d 445, 446[5] (Mo.App.W.D.1993); *Edwards v. State,* 794 S.W.2d 249, 250–51[3] (Mo.App.W.D.1990).

■ Consistent with that logic we hold that where, as here, an accused who has stood trial and been convicted seeks postconviction relief on the ground that his lawyer rendered ineffective assistance in failing to relay a prosecutor's plea offer, the accused must demonstrate a reasonable probability that he would have accepted the offer instead of standing trial.

■ The evidence presented in the motion court was to the contrary. As reported above, defense counsel testified Appellant did not want to plead guilty if, as a consequence, he would be "serving any time." Therefore, Appellant has failed to show he was prejudiced by defense counsel's failure to relay the plea offer described by Tate. Complaint "C" is without merit.

As to complaint "D," Appellant argues that had defense counsel presented the pathologist as a witness at trial, the pathologist could have testified to "the excessive level of the victim's intoxication," and also to "powder burns on the victim's hands and thermal burns at the wound entry corroborating the closeness of the victim and the fact he was lunging at [Appellant]." Additionally, says Appellant, the pathologist's report showed a shot trajectory that corroborated the defense theory of how the gun was held.

Neither side presented the pathologist as a witness in the motion court, and neither side offered the pathologist's report in evidence. Consequently, any conclusion as to what the pathologist's testimony would have been must be drawn solely from defense counsel's testimony. In that regard, defense counsel testified the pathologist's opinion was that Vaverka was "eight to ten feet" from "the shot." Additionally, defense counsel testified, "I knew that, if he testified, the pictures would get in."

The State points out that witness Thornsberry testified Vaverka was not more than "a foot and-a-half, two foot" from the end of the gun barrel at the time of the fatal shot. Thornsberry also testified, "I ... seen [Vaverka] reach for the gun...." Thus, one of the State's witnesses placed Vaverka closer to the muzzle than did the pathologist.

The State also points out that another of its witnesses, Graham, recounted he had been with Vaverka on the city square about thirty minutes when the fatality occurred. Graham testified Vaverka "was pretty drunk."

To demonstrate ineffective assistance of counsel in failing to present a witness, an accused seeking postconviction relief must show, among other things, that the testimony of such witness would have provided a viable defense. *State v. Twenter,* 818 S.W.2d 628, 640[21] (Mo. banc 1991).

Here, Appellant has failed to show the pathologist's testimony would have been any more beneficial to him than the testimony of State's witnesses Thornsberry and Graham. Indeed, considering the greater distance at which the pathologist placed Vaverka from the muzzle, coupled with the adverse impact defense counsel feared the "pictures" could have had on the jury,[4] it is reasonably infera-

---

4. Three photographs, each identified by the sheriff, were received in evidence at the jury trial. Neither party has filed any exhibits with us. As we understand the sheriff's testimony, two of the photographs show the "scene" of the shooting, including Vaverka's body as it lay in the street when the sheriff arrived. The third photograph also shows the scene, but with Vaverka's body covered. We infer these are not the "pictures" to which defense counsel was referring when he expressed concern about the pathologist testifying. There is nothing definitive in the record regarding the number of such "pictures" or what they showed. In *Thomas v. Director of Revenue,* 874 S.W.2d 427, 428–29[2, 3] (Mo.App.W.D. 1994), the court said: "All evidentiary omissions in the record on appeal are presumed to support the trial court's decision. *Henning v. Director of*

ble that presenting the pathologist as a witness could have been more harmful than helpful to Appellant. Appellant's contention that defense counsel rendered ineffective assistance in failing to subpoena the pathologist is denied.

This brings us to complaints "E" and "F."

 The motion court found the conduct and actions of defense counsel complained about by Appellant "were well within the limits of sound trial strategy." Additionally, the motion court found defense counsel "demonstrated considerable personal knowledge of potential witnesses and how the testimony of specific witnesses may have a negative impact on the outcome of a trial." The motion court further found:

> "The reasons given for [defense counsel's] decisions regarding ... calling witnesses at trial ... were specific and were within the range of reasonable professional assistance. Additionally, Movant has not shown by a preponderance of the evidence that he was in any way prejudiced by [defense counsel's] conduct and actions in handling the case in the trial court. The court concludes that Movant received constitutionally acceptable assistance of counsel."

Regarding complaints "E" and "F," we hold the order of the motion court is based on findings of fact that are not clearly erroneous, that no error of law appears, and that an extended discussion of those complaints in this opinion would have no precedential value. Complaints "E" and "F" are denied in compliance with Rule 84.16(b)(2) and (5), Missouri Rules of Civil Procedure (1994).

The order of the motion court is affirmed.

PREWITT and GARRISON, JJ., concur.

Revenue, 790 S.W.2d 513, 514 (Mo.App.1990). We will not convict a trial court of error when there is no evidence in the record from which to substantiate an appellant's claim. *Delf v. Cartwright*, 651 S.W.2d 622, 624 (Mo.App.1983)."