STATE of Missouri, Plaintiff–
Respondent,

v.

David GLEASON, Defendant–Appellant.

No. 17095.

Missouri Court of Appeals,
Southern District,
Division One.

July 11, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Aug. 2, 1991.

Application to Transfer Denied
Sept. 10, 1991.

**894**

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Carl S. Yendes, Lowther, Johnson, Joyner, Lowther, Cully & Housley, Charles M. LeCompte, Springfield, for defendant-appellant.

PREWITT, Judge.

Following jury trial defendant was found guilty of two counts of distribution and delivery of amphetamine and sentenced as a prior offender to life imprisonment on each count.

■ For his first point defendant contends that the trial court erred in denying his motion for judgment of acquittal because the state failed to present sufficient evidence that he was guilty of either count. In reviewing whether the evidence was insufficient to establish the crimes charged, the evidence favorable to the state is accepted as true, including the favorable inferences drawn from the evidence, and evidence and inferences contrary disregarded. *State v. Patterson*, 806 S.W.2d 518, 519 (Mo.App.1991).

The state's evidence on Count I was wholly circumstantial. The facts and circumstances in such a case must be consistent with each other and with the state's hypothesis of defendant's guilt and inconsistent with any reasonable theory of defendant's innocence. *State v. Rodden*, 728 S.W.2d 212, 213 (Mo. banc 1987). However, the circumstances need not be absolutely conclusive of guilt, nor demonstrate the impossibility of innocence; the existence of other possible hypotheses is not sufficient to prevent the jury from finding defendant guilty. *Id.* See also *State v.*

*Buffington*, 588 S.W.2d 512, 514 (Mo.App. 1979). Count I alleged defendant distributed and delivered amphetamine "to a confidential informant" on April 4, 1988. The state's evidence disclosed that the confidential informant was Paul Cummins who was working with the Missouri State Highway Patrol. Cummins died before the trial.

Cummins telephoned defendant's residence on April 4, 1988. The patrol recorded the conversation. A deputy sheriff, who knew defendant and defendant's girlfriend Pam Parks, identified their voices on the tape of that conversation. Parks answered the phone and Cummins asked if defendant was there. After getting on the phone defendant asked what Cummins was doing and the conversation proceeded:

Cummins: Just lookin' around, see what I can find, you know.

Defendant: Know what you mean.

Cummins: Got an old boy here from the city lookin'.

Defendant: Yeah.

Cummins: Reckon I can do any good?

Defendant: Yeah. Got old Ben with you?

Cummins: Huh?

Defendant: You got old Ben with you?

Cummins: No, I got Lee, a buddy of mine.

Defendant: Ben. You know what I mean?

Cummins: Yeah. Yeah. So you think it would be okay to come up by?

Defendant: Yeah, by yourself.

Cummins: By myself?

Defendant: Yeah.

Cummins was then searched by Patrol Sergeant Bickers to make sure he had no drugs. None were found. He was given $600. Sergeant Bickers traveled in an undercover patrol car with Cummins until they got near defendant's residence. Two other officers followed them. Bickers exited the undercover patrol car and the three officers watched Cummins drive into defen-

dant's driveway, get out of the vehicle and start toward the residence.

The officers saw defendant's car parked near the residence. The officers then moved further away so they could not be observed when the door was open to the residence. They were able to see Cummins drive out of the driveway and followed him until they were out of sight of the residence. Cummins stopped and handed over six grams of amphetamine and $100. Cummins was then searched to make sure he had no other drugs or money. The patrol vehicle was also searched for money or drugs. None were found.

There was no express reference in the phone conversation to the sale of illegal substances or other illegal activity. Telling Cummins to come alone may infer contemplated illegal or immoral activity as defendant apparently did not want the person Cummins said was with him to see what defendant and Cummins might do. Asking Cummins, "got old Ben with you?" could be a reference to a $100 bill which has a picture of Benjamin Franklin.

Assuming that the state's evidence was believed, the amphetamine would have had to have been obtained from somewhere on defendant's premises. It is unrealistic that Cummins found it lying about there. After telling Cummins it was alright for him to come, it is unlikely that defendant would have left shortly thereafter.

The conversation strongly suggests that defendant and Cummins were trying to disguise a contemplated transaction. Cummins went to defendant's residence and obtained illegal drugs. The circumstances were consistent with defendant's guilt and inconsistent with any reasonable theory or innocence. The jury could conclude that defendant anticipated an illegal transaction with Cummins, that after leaving defendant's premises Cummins had amphetamine received there and conclude that defendant directly or indirectly knowingly participated in the transaction. The evidence was sufficient to support the conviction under Count I.

Count II charged defendant with distribution and delivery of amphetamine to Cummins on April 7, 1988. On that date Cummins telephoned defendant and told him he might come see him, which defendant agreed to. Cummins then said, "Same thing" and defendant replied, "Okey, dokey." Cummins was searched by Bickers, no drugs were found, and he was given $600. A tape recorder was placed beneath his clothing. Sergeant Bickers retained possession of the device which turned the recording machine off and on.

Bickers and Cummins started toward defendant's residence in an undercover patrol car. When they got close Bickers exited the vehicle and Cummins proceeded to the residence. Bickers watched Cummins go to the front door and then return to the vehicle. Cummins then drove to a garage located nearby on defendant's premises. Bickers watched Cummins enter the garage. Inside the garage the following conversation occurred:

Cummins: Can I get that from you right quick?

Defendant: Yeah, Pam, run down there and get that from Bill ...

Cummins: I'll get out of here and let you get ...

Defendant: Quarter, seven of 'em.

Defendant: Seven ... Thank you.

Cummins: Thank you, buddy.

Defendant: You betcha. You like that?

Cummins: Yeah. This is good. Same thing?

Cummins: Soon as I get this gone, well see, this old boy's gotta look me up and then we, I gotta look you up, or we, I do.

Defendant: That's what makes it fun. (laughs) If it was easy to get to it'd be no fun.

Cummins: You know that's just about half goddam right, ain't it?

Defendant: It's true.

Cummins left the garage and drove a short distance away. He met with Bickers

and gave him a clear plastic packet containing 6.6 grams of amphetamine. Bickers testified the reference in the conversation to "Quarter, seven," "refers to a quarter ounce or seven grams which is one-fourth of an ounce." [1]

As stated in discussing Count I, the jury could have concluded that three days earlier Cummins had gotten amphetamine from defendant. When Cummins said he might come see defendant for the "same thing", that might mean for more amphetamine. Defendant agreed to that and in the garage gave him 7 grams of something not "easy" to obtain. When he left the garage Cummins had almost 7 grams of amphetamine which he did not have when he entered. The evidence was sufficient for the jury to find that he received amphetamine from defendant on April 7, 1988.

Defendant's second point states that the trial court erred in admitting into evidence transcripts of tape recordings of the phone conversations of April 4 and 7, 1988 and the conversation at the garage on April 7, 1988. Defendant says the admission of the transcripts violated the "best evidence rule" and caused the jury to give undue weight to the contents of the transcript instead of the recordings.

■■■ Defendant is correct that the best evidence rule applies to sound recordings. *State v. Strothers,* 798 S.W.2d 723, 724 (Mo.App.1990). However, that does not prevent transcripts of the recording to aid the jury in making the recording understandable. *State v. Mahaffey,* 676 S.W.2d 20, 23 (Mo.App.1984). Playing a tape recording for a jury and providing them transcripts does not violate the best evidence rule. *State v. Engleman,* 634 S.W.2d 466, 478 (Mo.1982); *State v. Brown,* 607 S.W.2d 881, 885 (Mo.App.1980). If portions of a tape are inaudible or there is a need to identify speakers, a transcript can be used. *State v. Stout,* 675 S.W.2d 931, 937 (Mo. App.1984). The admissibility of transcripts of tape recordings is for the sound discretion of the trial court. *Brown,* 607 S.W.2d at 885.[2]

■■ There was evidence that the transcriptions were accurate. It would be difficult for jurors, who would probably not know any of the participants in the conversation, or recognize their voices, to follow the tape without a transcript. There was also testimony that portions of one of the recordings was difficult to hear. We find no abuse of the trial court's discretion in admitting the transcripts.

Defendant asserts in his third point that the trial court erred when it refused to grant a mistrial after certain comments made during the closing argument of the state. There, the prosecutor said:

He didn't call—who did he call? He called Gleason. No evidence in this case whatsoever—one point that's really clear, the State's evidence is totally, totally substantiated in every way, not any evidence from the Defendant in any way, shape or form that contradicted any of this evidence so we know that this drug sale was set up, even seen it.

You've read it, you've heard it, you heard it yourself and then you know the sale in fact happened because you know all the facts surrounding that.

Now, the Defendant's going to tell you, well, how do we know if there were ten people in that trailer? How do we know if there were twenty people in that trailer?

Well, where's the evidence from the Defendant that he wasn't home? Where is the evidence from the Defendant that's not his voice on the tape?

---

1. Under avoirdupois weight, commonly used in this country, one ounce equals 28.349 grams. Webster's New Collegiate Dictionary 1319 (1979). Thus, one fourth of an avoirdupois ounce is 7.08725 grams.

2. For history and a discussion of the admissibility of transcripts of recordings, see Carr, Voices, Texts, and Technology: Evidence Law Confronts Tapes and Their Transcriptions, 35 St. Louis U.L.J. 289 (1991).

■ Only when there is direct and certain reference to the defendant's failure to testify is reversible error committed. *State v. Horn*, 806 S.W.2d 155, 157 (Mo. App.1991). When there is indirect reference, the court must review the statement in context to determine whether it highlighted or was reasonably apt to direct the jury's attention to the fact the defendant did not testify. *State v. Fogle*, 740 S.W.2d 217, 226 (Mo.App.1987).

■ The prosecutor may make reference to defendant's failure to offer evidence. *Horn*, 806 S.W.2d at 157; *State v. Hollinshed*, 764 S.W.2d 171, 172 (Mo.App. 1989). See also *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988), cert. denied, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

■ Here, the record shows that the prosecutor was referring to defendant's failure to offer evidence, not necessarily his failure to testify. The evidence indicates that there were other parties present or at least close by during the phone conversations and the discussion in the garage. Defendant presented no evidence. The comments of the prosecutor did not constitute reversible error.

For his remaining point, defendant states that the trial court committed "plain error" by failing to dismiss the second amended information upon which defendant was tried, which charged him with violations of § 195.211, RSMo Supp.1989, punishable under § 195.291, RSMo Supp.1989, because the statutes were not in effect at the time of the offense. Defendant acknowledges that this was not raised at trial. "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 29.12(b); Rule 30.20.

The original information, filed September 12, 1989, charged in both counts a violation of § 195.020, RSMo 1986, punishable under § 195.200.1(4), RSMo 1986. On April 4, 1990, an amended information was filed charging two counts of a violation of § 195.211, RSMo Supp.1989, punishable under § 195.285.1, RSMo Supp.1989.

On July 6, 1990, the "second amended information" charged defendant with two counts of violating § 195.211, RSMo Supp. 1989. It also alleged that defendant was a "prior offender" under § 195.275, RSMo Supp.1989, and §§ 558.016 (since amended, see RSMo Supp.1990), 557.036 (since amended, see RSMo Supp.1990), and 558.019 (since amended, see RSMo Supp.1990), RSMo Supp.1989. The second amended information recited that on November 5, 1987, defendant had plead guilty to the felony of possession of amphetamine, a schedule II controlled substance in the Circuit Court of Wright County, Missouri. Trial commenced July 10, 1990.

Section 195.020, RSMo Supp. and § 195.200, RSMo Supp.1986, were repealed effective August 28, 1989. See RSMo Supp. 1989; *State v. Freeman*, 791 S.W.2d 471, 473 (Mo.App.1990). Under § 1.160, RSMo 1986, their repeal does not affect their validity as to prior offenses.[3]

■ Referring to an inapplicable statute in a criminal charge does not make it void as an information is not necessarily insufficient because the wrong statute is cited. *Hughes v. State*, 780 S.W.2d 357, 359 (Mo.App.1989). The test is whether the charge contains all the essential elements of the offense and clearly apprises the defendant of the facts constituting the offense. *Id.* Except for the statutory references, the second amended information followed MACH–CR 32.08, the form for charges under § 195.020.

---

3. It is not necessary to determine if § 1.160(2), RSMo 1986, might apply as the punishment was not reduced or lessened by the repeal of §§ 195.020 and 195.200 and the enactment of the "Comprehensive Drug Control Act of 1989", §§ 195.005–195.425, RSMo Supp.1989. As a prior drug offender the maximum punishment was the same. Under § 195.200.1(4), (5) the maximum was life imprisonment. That is also true after the Comprehensive Drug Control Act of 1989. See §§ 195.211.2, 195.291.1, RSMo Supp. 1989, and § 558.011.1(1), RSMo 1986.

Both counts of the second amended information contain the elements showing a violation of § 195.020, RSMo 1986, and apprised defendant of the facts of the offenses. There was no plain error in the trial court not dismissing the second amended information. Point IV is denied.

The judgment is affirmed.

MAUS, P.J., and CROW, J., concur.