STATE of Missouri, Plaintiff–
Respondent,

v.

Roderick Brian STEVENSON,
Defendant–Appellant.

Roderick Brian STEVENSON,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 16941, 18118.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 1993.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-appellant and movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent and respondent-respondent.

SHRUM, Judge.

A jury found the defendant guilty of second degree murder and armed criminal action in connection with the slaying of Eston Lane. Found to be a prior and persistent offender, the defendant was sentenced by the trial court to consecutive terms of life imprisonment on the murder conviction and 20 years on the armed criminal action conviction. The defendant appeals from the convictions and sentences in case No. 16941.

The defendant's motion for postconviction relief pursuant to Rule 29.15 was denied by the motion court after an evidentiary hearing. The defendant appeals that ruling in case No. 18118. We consolidate the appeals for review.

We affirm both judgments.

DIRECT APPEAL—CASE NO. 16941

FACTS

The defendant does not challenge the sufficiency of the evidence to convict him. Viewed in the light most favorable to the verdict, the following facts are pertinent. On May 29, 1989, between 9:00 and 10:00 p.m., the defendant drove his car to Silver

Springs Park in Springfield, Missouri. Passengers in his car were Lloyd Bolden and Lloyd's son, Derrick. Derrick testified he got into the car shortly before going to the park after the defendant told him that the victim "had been jumping on [Lloyd] [f]or something he had nothing to do with." Derrick quoted the defendant as having said, " 'I'm going to go down there' " and " 'I'm going to kill that m___ f___.' " When asked who the defendant was talking about, Derrick answered, "[T]he picture I got was Eston."

When they arrived at the park, the defendant and Derrick got out of the car. Derrick had a .25 caliber pistol in his possession and the defendant had a .22 caliber pistol. Derrick walked up to the victim and repeatedly asked him "why was he going to jump on my dad, and he wouldn't say nothing." The defendant was on the opposite side of the car from Derrick and the victim; the victim's back was to the defendant. After Derrick asked his question four or five times and received no verbal response, the victim "took his hand and stepped back and put it behind his back." At that point, Derrick said, "I pulled my gun out of my pocket and put it down to my side...." Derrick heard two shots, whereupon the victim "bent over a little bit." Derrick's pistol fired once—he said he did not know where it was pointed—and the victim went down. The defendant then walked around the car, walked over to where the victim was rolling around on the ground, and pointed his gun down at him. Derrick grabbed the defendant, told him "no," and pulled him away. The defendant and Derrick then left the park, going in opposite directions.

The victim later died at a Springfield hospital from bullet wounds. Examination of his body revealed a projectile entry wound on his back. There was evidence that his back wound was caused by a .22 caliber bullet which had penetrated the lower lobe of his right lung, entered the center portion of his chest, perforated a vein leading from the lungs to the heart, punctured the pericardial sac, and penetrated the victim's esophagus. The victim had a second entry wound on his right thigh. The projectile causing the thigh wound flattened when it hit the victim's femur and its caliber was not determined. Eston Lane died from bleeding secondary to the gunshot wound to the chest.

The evening of the shooting, sometime after 10:00 p.m., the defendant arrived at the home of Mae Ella Jordan. He told her that he and Derrick Bolden had "got into it" with the victim at the park and that they had shot him. Telling Mae that he wanted to wash his hands, he asked her for some oil to put on his hands so he could get the gun powder smell off of them.

Two of the defendant's co-workers testified that on May 30, 1989, the defendant told them that he was in trouble, that he had shot someone the night before. He also told them he had disposed of the guns.

Marie Finley, called as a defense witness, testified that she went to the park with the defendant; that the defendant was not with Derrick Bolden; and that she and the defendant were in the parking lot with her family when she heard a single shot fired.

There was evidence that at the time of the shooting a Dwight Hobson was playing basketball in the park. He saw an argument in the park, heard what sounded like two shots, looked to where the victim was lying on the ground, and saw a person running in a northeast direction. Hobson used his citizens band radio to call for help and then administered first aid to the victim. Hobson told an investigator for the public defender's office that if the defendant "had admitted to doing the shooting he was crazy ... that he wasn't the one involved."

At the instruction conference, the defense counsel interposed only a general objection to the instructions.

Additional facts are recited where pertinent to the points being discussed.

## DISCUSSION AND DECISION

*Point I: Exclusion of Evidence of Another Person's Involvement*

■ In his first point the defendant avers that the trial court erred in excluding

evidence that Lloyd Bolden had blood on his clothes after the shooting and in excluding what the defendant claims was an inculpatory statement made by Lloyd Bolden at the scene of the crime. The excluded evidence was that when Lloyd Bolden returned home on the night of the homicide his clothing was stained with what laboratory analysis later confirmed to be blood of undetermined type, and, while at the crime scene, Lloyd Bolden called one Hobson a "snitch."[1]

Rules governing admissibility of evidence that someone other than the accused committed a crime are stated in *State v. Umfrees*, 433 S.W.2d 284 (Mo. banc 1968):

> Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime. The test generally for the admission of such evidence is stated in 22A C.J.S. Criminal Law § 622b, at page 451, as follows: "The evidence, to be admissible, must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible."

433 S.W.2d at 287–88[4, 5] (citations omitted). *See also State v. Schaal*, 806 S.W.2d 659, 669[18] (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992); *State v. Easley*, 662 S.W.2d 248, 251[5] (Mo. banc 1983); *State v. LaRette*, 648 S.W.2d 96, 103[9, 10] (Mo. banc), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Stokes*, 638 S.W.2d 715, 723[10] (Mo. banc 1982), *cert. denied*, 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983).

The defendant argues that evidence of blood on Lloyd Bolden's clothing "tended to show, or at least was preliminary to such a showing, that Lloyd Bolden rather than [the defendant] shot Eston" and that evidence of Lloyd Bolden's statements "further linked Lloyd Bolden to the offense and should have been admitted." How this argument can logically be derived from the excluded evidence we cannot fathom and the defendant offers no explanation. Borrowing from *Umfrees*, the excluded evidence does not directly connect Lloyd Bolden with the crime and does not tend clearly to point out Lloyd Bolden as the guilty person. 433 S.W.2d at 287–88[4–5]. Such evidence was inadmissible and the trial court did not err in rejecting it. Point I is denied.

*Point II: Admission of Photographic Evidence*

■ The defendant's second challenge is that the trial court erred and abused its discretion in admitting into evidence two photographs of the victim's surgically exposed thoracic cavity and the organs contained therein. He argues that any probative value such evidence may have had was outweighed by its prejudicial impact; the photographs were cumulative, repetitious, gruesome, and unduly inflammatory.

Missouri law is well developed on the admission of photographic evidence of crimes of violence. Broad discretion is vested in a trial court in the admission of such evidence, *State v. McMillin*, 783

---

1. From the defendant's brief and the trial transcript, it appears the following statements by defense counsel during an offer of proof describe the entire evidence of an inculpatory statement by Lloyd Bolden:

   [The investigator's] testimony is going to be that Hobson told him [that he saw Lloyd Bolden approach the people in the crowd near the victim].... The way—Mr. Bolden, who you just said was—approached the crowd, told Hobson he was a snitch.

   ....

   [The investigator's] testimony would be that Dwight Hobson told him that Lloyd Bolden had called him. He snitched and said that generally to the people standing around.

S.W.2d 82, 100 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990), although that decision may be overturned if it constitutes an abuse of discretion. *State v. Kincade*, 677 S.W.2d 361, 366[11] (Mo.App.1984). Missouri courts have allowed admission into evidence of photographs to corroborate the testimony of a witness, *State v. Davis*, 653 S.W.2d 167, 175[16] (Mo. banc 1983), to assist a jury to better understand the facts and testimony of witnesses, *State v. Stevens*, 467 S.W.2d 10, 24[16] (Mo.), *cert. denied*, 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971), and to prove elements of the case, *State v. Cutts*, 694 S.W.2d 804, 810[14] (Mo.App.1985), including issues of "the nature and location of wounds and the cause of death." *State v. Sweet*, 796 S.W.2d 607, 615 (Mo. banc 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991).

The defendant acknowledges the trial court's broad discretion in the admission of photographs but points to the equally well settled law that photographs of the effects of violent crimes are not properly received in evidence when they do not assist the jury in deciding matters submitted to it. He relies upon the rule of evidence set out in *State v. Floyd*, 360 S.W.2d 630 (Mo. 1962), where the prosecutor offered pictures of the victim's decomposed body, even though the prosecutor made no claim the photos were relevant to the issues of the case. Our supreme court reversed the defendant's manslaughter conviction, holding that the defendant's objection should have been sustained because the pictures served simply to arouse the jury.

> "[S]uch photographs should not be admitted where their sole purpose is to arouse the emotions of the jury and to prejudice the defendant, * * * the sound governing principle is that photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions * * *."

*Id.* at 633[3] (quoting 73 A.L.R.2d 725, 802 (1976)). The defendant notes that more recently, in *State v. Wood*, 596 S.W.2d 394, 403[25] (Mo. banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), our supreme court reaffirmed Missouri law to be that photographs of decomposed bodies should not be admitted where their sole purpose is to arouse the emotions of the jury and to prejudice the defendant.

Continuing, the defendant observes that whether the victim had a chest wound was not at issue and that the only question for the jury to decide was whether the defendant caused the victim's death. He argues that no proper justification existed for introducing the photographs. He concludes his argument by saying that the photographs were not only unnecessary but also patently irrelevant and grossly inflammatory.

The photographs here were not of the external part of the victim's body, showing entrance and exit wounds. Rather they were photographs of internal organs of the victim's chest cavity, taken during an autopsy after the chest had been surgically opened and pulled apart. The photos showed the bullet track through the chest cavity, with one photograph showing a perforation of the esophagus and another a perforation of part of the lung. As the prosecutor urged the trial court to admit the photographs, he acknowledged they were "gruesome" saying, "There's blood when somebody dies of a bullet wound." The prosecutor did not state to the trial court what the relevancy of the photographs was or how they were necessary to show material facts or conditions.[2] At best, the prosecutor's remarks can be read

---

2. We quote in full the prosecutor's response to the defendant's objection:

MR. PHILLIPS: Judge, what it [one of the photographs] depicts is the—are the wound of the internal organs. It is awful that there is—

that there's blood when somebody dies of a bullet wound. That's not prejudicial. That's what the defendant did. That's not what—that's just the way it is. It is too bad it is gruesome

only as an attempt to explain what the photographs depict and to relate the state's effort to minimize their inflammatory effect. Not until the state presented its argument to this court did it contend that the photographs were relevant and admissible to show the wounds that were inflicted on the victim.

■ We would be hard-pressed not to reverse the judgment because of the introduction of the two photographs were it not for two facts: punishment was assessed by the court and not the jury, and the evidence of the defendant's guilt was strong. These facts demonstrate a lack of prejudice to the defendant from admission of the photographs into evidence. "In matters involving the admission of evidence, the court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *McMillin*, 783 S.W.2d at 98; *State v. Thomas*, 820 S.W.2d 538, 542[1] (Mo.App.1991). Admission of irrelevant testimony may be considered as harmless error when strong evidence of defendant's guilt exists. *State v. Girardier*, 801 S.W.2d 793, 796[3] (Mo.App.1991).

■ Even if the photographs had no probative value and were cumulative, gruesome, and inflammatory, the defendant has demonstrated no prejudice. It was impossible for the jury to be swayed by the photographs into imposing a greater sentence than it might have absent the photographs because the jury had no responsibility of imposing sentence. Nor can the defendant demonstrate that the jury was swayed by the photographs to reach its verdict because evidence of the defendant's guilt was strong. Finding no prejudice to the defendant from the admission of the photos, we reject Point II.

*Point III: Closing Argument*

In his third point the defendant charges error regarding the state's closing argu-

ment. He argues that the "prosecutor stated there was no evidence that [the defendant] did not intend to kill the victim thereby making a prejudicial reference to [the defendant's] right not to testify as he was the only person who could refute this." He claims that the following comment, made in the first part of the prosecutor's closing argument, was an indirect reference to the defendant's failure to testify that deprived him of a fair trial:

Mae Jordan said ... she heard the defendant say that he had shot a man twice. She asked him who. Eston Lane.

There was no representation during the defense evidence that he didn't say that he intended to kill Eston Lane. The only thing that's refuted by the defense evidence—

Objection to the foregoing was overruled by the trial court.

■ A trial court is given wide latitude in its control of closing arguments. *State v. Clark*, 809 S.W.2d 139, 143[5] (Mo.App. 1991). "Only when there is [a] direct and certain reference to the defendant's failure to testify is reversible error committed." *State v. Gleason*, 813 S.W.2d 892, 897[7] (Mo.App.1991). When there is an indirect reference, the court must review the statement in context and look at the circumstances to determine whether it highlighted or was unreasonably apt to direct the jury's attention to the fact the defendant did not testify. *Id.*

■ The prosecutor may make reference to a defendant's failure to offer evidence. *Gleason*, 813 S.W.2d at 897[8]; *State v. Horn*, 806 S.W.2d 155, 157[5] (Mo.App. 1991). *See also State v. Sidebottom*, 753 S.W.2d 915, 920[6] (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

■ Here, the state offered direct evidence of the defendant's stated intent to

---

and made the—I've tried to—I've eliminated it by covering—by masking the flesh and the things that are easily—that are most offensive to the jury and tried to eliminate it, not just to the most technical—the most scientific view for the Doctor to explain. That's the attempt. We have

successfully done so to where it is—either [State's Exhibit] 2–FF or [State's Exhibit] 2–EE shows just the damage that was done and not—and is not in any way more graphic than is necessary. That's why I think it's important.

kill the victim. Such evidence came from Derrick Bolden who testified that before the shooting he talked with the defendant and that the defendant had said, "'I'm going to kill that m___ f___ (the victim).'" Derrick testified that his father Lloyd Bolden and the defendant were together in the defendant's car when the threat was made. Yet, when Lloyd Bolden was called as a defense witness, he was never asked by defense counsel to refute Derrick's testimony concerning the threat.

The record demonstrates that the prosecutor was referring to the defendant's failure to offer evidence, not necessarily his failure to testify. The evidence indicated that there were others present when the defendant made his threat to kill the victim. Yet, defendant presented no evidence on this issue. The comments of the prosecutor did not constitute reversible error. We reject Point III.

*Point IV: Plain Error In Giving Of Reasonable Doubt Instruction*

In his fourth point the defendant charges that the trial court committed plain error in giving Instruction 4 (MAI–CR3d 302.04) in that the instruction's definition of "proof beyond a reasonable doubt" allowed the jury to find the defendant guilty on "a degree of proof ... below that required by the due process." The defendant bases his attack on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

Our supreme court has repeatedly rejected this identical attack on the instruction. *State v. Blankenship,* 830 S.W.2d 1, 13[14] (Mo. banc 1992). The instruction has been repeatedly upheld. *State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991); *State v. Murray,* 744 S.W.2d 762, 771 (Mo. banc 1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). The defendant's Point IV is denied.

### POSTCONVICTION APPEAL— CASE NO. 18118

The fifth point challenges the motion court's order denying the defendant's Rule 29.15 postconviction motion. Involved is an allegation of ineffective assistance of counsel, specifically that trial counsel refused to allow the defendant to testify in his defense despite his desire to do so. Following an evidentiary hearing, this claim was ruled adversely to the defendant.

Our review of the motion court's denial of postconviction relief under Rule 29.15 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989); *State v. Kennedy,* 842 S.W.2d 937, 945[10] (Mo.App. 1992). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake was made. 770 S.W.2d at 695–96.

■ It is well settled that a trial counsel's advice to his client as to whether or not to testify is a matter of trial strategy and, barring exceptional circumstances, is not a ground for postconviction relief. *Kennedy,* 842 S.W.2d at 945[12]; *State v. Gray,* 812 S.W.2d 935, 940 (Mo.App.1991); *Dixon v. State,* 763 S.W.2d 204, 207[6] (Mo. App.1988).

■ In support of the claim of ineffective assistance of counsel, the defendant testified that at the time of his trial he believed he should testify. However, his trial lawyer had "absolutely refused to allow [him] to testify" because of his concern that the defendant's record would be disclosed to the jury.

Trial counsel testified at the postconviction hearing and denied telling the defendant that he could not testify. He said that he gave the defendant his best-informed information about the pros and cons of testifying, including the cross-examination that the state could subject him to and the fact that he had two prior felony convictions which, if he testified, could be used to impeach him. Moreover, he advised the

defendant about possible impeachment from inconsistencies in his statements. Trial counsel further testified that as the trial progressed, he kept the defendant informed as to what factors he should consider in making his decision about testifying, and finally, they reached a point at which the defendant "decided on his own to not testify."

The motion court evidently believed trial counsel's testimony on this issue. Among its fact findings are the following:

> 3. The Court finds that trial counsel did not refuse to allow Movant to testify on his own behalf. The Court finds that the decision not to testify was made by Movant himself.

Deferring to the motion court's superior opportunity to judge the credibility of the witnesses, *Twenter*, 818 S.W.2d at 635[8], and finding no unusual circumstances in this record that dictate otherwise, *Kennedy*, 842 S.W.2d at 945[12], we conclude that the motion court's judgment on the issue of trial counsel's advice on testifying was not clearly erroneous. Point V is rejected.

The judgment of conviction in No. 16941 is affirmed. The judgment in No. 18077 denying the Rule 29.15 motion is affirmed.

PARRISH, C.J., concurs in separate opinion.

CROW, P.J., concurs.

PARRISH, Chief Judge, concurring.

I concur. I write separately, and in addition to the principal opinion, for the purpose of commenting further on the admission into evidence of photographs that displayed the surgically exposed thoracic cavity and organs of the victim. The attempt of a prosecuting attorney to offer such evidence is, in my opinion, reprehensible. The admission of that evidence was erroneous. Nevertheless, under the unique circumstances of this case, since punishment was assessed by the court and not the jury and the evidence of the defendant's guilt

was strong, I agree with the principal opinion that the error was not prejudicial.

The very strength of this case is compelling reason why a prosecuting attorney should not attempt to present evidence of this type. This court said in *State v. Hernandez*, 815 S.W.2d 67, 71 (Mo.App.1991):

> It is unfortunate when prosecuting officials with otherwise strong evidence in support of a conviction choose to go beyond the legitimate evidence that is available to them and pursue other inflammatory and irrelevant triviality in quest of conviction.

Although, in *Hernandez*, we added, "When this occurs, the result of appellate review is assured," *Id.*, this case is a rare exception. Nevertheless, prosecuting officials need to recognize that they have a greater responsibility than to assure the conviction of a defendant. It is their responsibility to assist the trial court in assuring that both the state and the defendant get a fair trial. In addition to these "due process" responsibilities, a prosecuting official should be mindful of the financial burdens of the governments they serve. The cost of conducting a felony trial is substantial. It would be unfortunate for such costs to be duplicated simply because overzealous prosecution resulted in a conviction that would have to be reversed on appeal when there was otherwise strong evidence that would likely have supported that conviction. Fortunately, in this case, the State of Missouri will be spared the cost of another trial. Hopefully, those officials charged with representing the State of Missouri in criminal cases will avoid this type of conduct in the future.