STATE of Missouri, Respondent,

v.

Joseph L. BEDELL, Appellant.

Joseph L. BEDELL, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18858, 19474.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 4, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Joseph L. Bedell, was found guilty by a jury of distributing diazepam, a controlled substance. § 195.211.[1] The trial court, finding Appellant a prior drug offender, § 195.275.1(1), a persistent drug offender, § 195.275.1(2), a prior offender, § 558.019.4(1), a persistent offender, § 558.019.4(2), and a class X offender, § 558.019.4(3), sentenced him to twenty years' imprisonment. § 195.291.1–.2. Appellant brings appeal 18858 from that judgment.

While appeal 18858 was pending, Appellant commenced an action per Rule 29.15[2] to vacate the judgment. After an evidentiary hearing, the motion court entered judgment denying relief. Appellant brings appeal 19474 from that judgment.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 18858

The first of Appellant's two points relied on maintains the trial court erred in receiving in evidence a transcript of a tape recording of the transaction during which Appellant allegedly sold the diazepam. The second point attacks the jury instruction defining reasonable doubt. We address the points in the order presented.

■ Because Appellant does not challenge the sufficiency of the evidence to support the verdict, we shall recite only the evidence necessary for consideration of the first point. In doing so, we view the evidence and all its reasonable inferences in the light most favorable to the verdict, disregarding any evidence or inferences to the contrary. *State v. Morovitz*, 867 S.W.2d 506, 508[3] (Mo. banc 1993).

So viewed, the evidence demonstrates that on July 14, 1992, Springfield police officers Mark Deeds and Dan Schrader were working "undercover" on the "Narcotics Enforcement Team." Deeds arranged by telephone to meet a woman on a "Brown Derby" parking lot about 9:00 p.m., that date to buy drugs.

At the appointed time, Deeds and Schrader arrived at the agreed site in a pickup driven by Schrader. Deeds was wearing a cassette recorder concealed beneath his clothing.

A few minutes later, a woman and Appellant arrived in an automobile driven by Appellant. Appellant exited the automobile, walked to the driver's side of Schrader's pickup, and conversed with Schrader and Deeds.

During the chat, Appellant mentioned he had some Valium—a "brand name for diazepam"—for sale at "$2 apiece." Deeds expressed interest, whereupon Appellant told Deeds to "hop into his car."

Deeds exited the pickup and entered the rear of the automobile on the passenger side behind the woman. Appellant, occupying the driver's seat, asked Deeds how many pills he wanted. Deeds bought ten, paying twenty dollars.

Deeds exited the automobile and reentered Schrader's pickup. Appellant and the woman drove away.

At trial, Deeds identified Exhibit 4 as the tape upon which the cassette recorder recorded the encounter described above. Deeds avowed there had been no additions to, or deletions from, the tape, hence it was a "true and accurate reflection of the transaction to the extent that it is audible and intelligible." However, cautioned Deeds: "[The quality] was somewhat poor. A lot of it you could not understand."

Deeds identified Exhibit 5 as a typed transcript of Exhibit 4 prepared by his secretary. Deeds' testimony about Exhibit 5 included this:

> "Q  Did I ask you to review [Exhibit 5] in connection with the tape for accuracy?
>
> A  Yes, you did.

---

1. References to statutes are to RSMo Cum.Supp. 1991.

2. Rule references are to Missouri Rules of Criminal Procedure (1993).

Q   And can you tell us whether or not this is in fact an accurate transcript of the tape to the extent that it is audible and intelligible?

A   Yes, it is."

Exhibit 5 attributed statements to four individuals, identifying them by initials. In that regard, Deeds' testimony was:

"Q   ... could you tell us ... the initials ... and the names, what are those based on?

A   The initials refer to the parties involved in the conversation. There were four parties involved in the conversation.... The initials indicate by who that person is, using the first and last names.

Q   After you reviewed the tape, did you also review to determine the identification of each of the speakers as they spoke?

A   Yes, I did.

Q   And does the transcript accurately reflect the identity of the speakers by those initials?

A   Yes, it does."

When the prosecutor offered Exhibit 5 in evidence, Appellant objected, stating: "[T]here's been no showing other than the officer's mere assertion that it's accurate."

The trial court received Exhibit 5 in evidence over that objection. The prosecutor then requested permission to play Exhibit 4 (the tape) for the jury. The trial court granted the request. Each juror was furnished a copy of Exhibit 5 while Exhibit 4 was played.

Later, during cross-examination by Appellant's lawyer, Deeds testified Exhibit 5 was not the first transcript of Exhibit 4; it was the second. Deeds identified Defendant's Exhibit A as the first transcript.

Both transcripts have dialogue between Deeds and Appellant regarding a possible site for another transaction later that night. Exhibit A contains this colloquy:

"JB:   And I'm out kinda far, so you might have to meet me halfway.

MD:   Like right here?

JB:   Yeah, or somewhere else after later on, 'cause, you know, this park's closed later."

The last-quoted remark by "JB" on Exhibit A is not identical to the version on Exhibit 5. The remark appears on Exhibit 5 thus:

"JB:   Yeah, or somewhere else after later on, cause you know this will probably be closed later."

Asked about the discrepancy, Deeds replied that he reviewed the first transcript (Exhibit A) while listening to the tape. His testimony:

"Q   And what did you translate that line to be?

A   On the original transcript where it says, 'Cause you know this will, this ...' Well, I don't have the original in front of me, but the word park was in there in the original transcript. After I reviewed the transcript, I found that that word is not park, it is probably, and that correction was made and put into this transcript that I and the jury have in front of ourselves today."

Appellant maintains the receipt of Exhibit 5 in evidence was error and denied him a fair trial. He argues:

"Deeds acknowledged that he had deleted 'parks' from the following: 'Yeah, or somewhere else after later on, cause you know this probably will be closed later.' This deletion rendered Exhibit 5 inaccurate. With 'parks' inserted in this sentence, the entire context is altered, as it would seem not to refer to a transaction in the Brown Derby Liquor Store parking lot."

██   Appellant concedes jurors may be furnished a transcript of a tape recording if portions of the tape are inaudible or there is a need to identify the speakers. *State v. Stout,* 675 S.W.2d 931, 937[9] (Mo.App.E.D. 1984). Admissibility of transcripts of tape recordings is for the sound discretion of the trial court. *State v. Gleason,* 813 S.W.2d 892, 896[5] (Mo.App.S.D.1991).

In *Gleason,* the appellate court declared there was evidence that transcripts of tape recordings were accurate and that portions of one recording were difficult to hear; consequently, the trial court did not abuse its

discretion in admitting the transcripts. 813 S.W.2d at 896.

Here, in determining whether the trial court abused its discretion in receiving Exhibit 5 in evidence, we note the discrepancy between Exhibit 5 and Exhibit A as to the contraction "park's" was not revealed to the trial court before Exhibit 5 was admitted. As we have seen, Appellant demonstrated that discrepancy on cross-examination *after* Exhibit 5 was in evidence.

When the trial court ruled on the admissibility of Exhibit 5, the foundation for its admission was Deeds' testimony that Exhibit 5 was an accurate transcript of Exhibit 4 (the tape) to the extent that Exhibit 4 was audible and intelligible. Appellant cites no case indicating that the foundation supplied by Deeds was so deficient that admission of Exhibit 5 was an abuse of discretion. On the contrary, that foundation appears comparable to the one in *Gleason*, 813 S.W.2d at 896.

The ground on which Appellant now attacks Exhibit 5 was developed after the admissibility issue was decided. In that respect, the instant case is analogous to *State v. Cain*, 37 S.W.2d 416 (Mo.1931). There, a witness testified that a man whom she later learned was the accused confronted her in a drunken condition on the occasion in question. On cross-examination, it was revealed that the witness was unable to identify the accused in the courtroom as the drunken man about whom she had testified. The trial court denied the accused's motion to strike the testimony. The Supreme Court of Missouri held the ruling was reversible error, explaining that when an objection to testimony is not apparent from the question that adduces it, but is developed later, such as on cross-examination, the failure to object at the time the testimony comes in is no waiver of the right to have it excluded. *Id.* at 418[5]. It is only when the objectionable nature of the testimony becomes apparent that the failure to object may constitute a waiver of objection. *Id.*

The corollary, of course, is that where the objectionable nature of evidence becomes apparent after it has been received and no motion to strike is made when the revelation occurs, the issue cannot be raised on appeal. *See: State v. Johnson*, 286 S.W.2d 787, 795[18] (Mo.1956), holding that where a motion to strike testimony is made after the witness is excused, the trial court will not be convicted of error in denying the motion.

Here, Appellant made no motion to strike Exhibit 5 after the discrepancy between it and Exhibit A was disclosed. Consequently, the trial court was never required to consider whether the discrepancy rendered Exhibit 5 inadmissible. An appellate court will not convict a trial court of error on an issue which was not put before it to decide. *State v. Fleer*, 851 S.W.2d 582, 592[6] (Mo.App.E.D.1993); *State v. Herrick*, 814 S.W.2d 660, 663 (Mo.App.S.D.1991).

Because Appellant (a) has failed to demonstrate that the foundation laid by Deeds for admission of Exhibit 5 was insufficient, and (b) made no motion to strike Exhibit 5 after the variance between it and Exhibit A was revealed, we find no merit in Appellant's first point.

Furthermore, the record shows that after the discrepancy was pointed out, Appellant's lawyer replayed a portion of the tape (Exhibit 4) in the jury's presence—inferably the portion toward which the first point is directed. In final argument, Appellant's lawyer told the jury the word "park" indicates the conversation occurred in a park, not on a parking lot. The jury was able to weigh that argument and reach its own conclusion as to what weight, if any, to give Exhibit 5. Appellant has thus shown no prejudice. Consequently, even if the receipt of Exhibit 5 in evidence had been error, Appellant's first point would be futile, as only prejudicial error requires reversal. *State v. Kurtz*, 564 S.W.2d 856, 861[12] (Mo. banc 1978).

Appellant's second point, citing *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), asserts the trial court erred in giving an instruction defining "reasonable doubt" patterned on MAI–CR 3d 302.04.

The Supreme Court of Missouri has repeatedly upheld the instruction against identical attacks. *State v. Blankenship*, 830

S.W.2d 1, 13[14] (Mo. banc 1992), and cases cited there. Appellant acknowledges this, but presents the point for purpose of preservation in the event a federal court renders a contrary decision.

We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const., Art. V, § 2 (1945); *Turner v. State,* 839 S.W.2d 46, 47[1] (Mo.App.S.D.1992). Appellant's second point is controlled by *Blankenship.* It is, accordingly, denied.

Judgment affirmed.

### Appeal 19474

Appellant's brief assigns no error regarding the motion court's denial of postconviction relief. Consequently, Appellant has abandoned appeal 19474. *State v. Oplinger,* 847 S.W.2d 156, 157[1] (Mo.App. S.D.1993); *State v. Barnard,* 820 S.W.2d 674, 677[1] (Mo.App.W.D.1991).

Appeal dismissed.

PREWITT and PARRISH, JJ., concur.