**STATE of Missouri, Respondent,**

v.

**Dale Wayne STEPHAN, Appellant.**

Nos. WD 50157, WD 52283.

Missouri Court of Appeals,
Western District.

Submitted Oct. 10, 1996.

Decided Feb. 25, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

Application to Transfer Denied
April 29, 1997.

Ellen H. Flottman, Asst. Public Defender, Columbia, appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Attorney General, Jefferson City, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

SMART, Presiding Judge.

Dale Wayne Stephan appeals from his conviction, after jury trial, of murder in the first degree, § 565.020.1, RSMo 1994, for which he was sentenced to life imprisonment without the possibility of parole. Stephan also appeals from the denial of his Rule 29.15 motion for post-conviction relief, following an evidentiary hearing. In his direct appeal, Stephan contends that the trial court erred: (1) in overruling the defense objections to testimony as to gunshot residue found upon Stephan's hands; (2) in sustaining the State's objection to the testimony of Stephan's expert witness, a magician and escapologist, that Stephan could not have tied himself up; and (3) by denying his motion for new trial and denying his motion for post-conviction relief because the State withheld exculpatory information from the defense. Stephan claims that the motion court clearly erred in denying his Rule 29.15 motion for postconviction relief because he was denied effective assistance of counsel in that: (1) counsel failed to allow Stephan to testify and failed to explain to Stephan that he was entitled to make the decision about whether to testify; and (2) counsel failed to present witnesses who would have incriminated Billy Stephan and Lawanda Mason and failed to request that Billy Stephan's fingerprints be compared to an unknown print. Stephan also claims that the motion court erred in denying his motion to disclose Billy Stephan's fingerprints to motion counsel. In his final point, Stephan claims that the motion court erred in denying his Rule 29.15 motion because his conviction resulted in a fundamental miscarriage of justice because of newly discovered evidence presented at the evidentiary hearing. The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

Appellant Stephan resided with his mother, Lawanda Mason, and his stepfather, Charles Mason, on a farm near Savannah, Missouri. At school, on March 15, 1993, Stephan told Norman Banks that in the evening he would be driving his stepfather's new

Ford Probe, a car that he was not ordinarily permitted to drive. Banks told Stephan that he did not believe him, and Stephan attempted to bet Banks $100.00 on the matter. At about 7:00 p.m., on the evening of March 15, 1993, Stephan drove to Banks' house in the Probe. Stephan and Banks drove around in the Probe that evening, joined by two other acquaintances. After dropping off one of the young men at his house, Stephan, and the two others went to the Corner Store and bought a 12 pack of beer. Stephan paid for the beer, showing Banks a wallet which he said contained $1200.00. The three cruised over to a Shop and Hop in Savannah where Stephan purchased cigarettes and Skoal. Surveillance cameras at the Shop and Hop showed Stephan and his friends in the shop between 9:45 and 9:48 p.m. After cruising around Savannah a short time, Stephan took the other two young men to their homes. Before he did so, he mentioned the fact that he had two billfolds on him. Stephan's friends arrived at their homes around 10:30 p.m.

Lawanda Mason worked as a medical technician in St. Joseph, Missouri. On the evening of March 15, 1993, she arrived home from work about 11:40 p.m. When she arrived home, she noticed that the Ford Probe and a pickup truck belonging to her husband, Charles Mason, were there, but she did not see Charles or her son. Mrs. Mason went to the kitchen and fixed herself something to eat. After she had eaten, she went to bed.

According to Mrs. Mason, she was awakened by a banging noise. She got up and opened the door to find Stephan, who was tied up with rope and duct tape. She partially untied Stephan from the tape and the rope. Stephan told her that "Dad's been shot." She asked him where. Stephan told her that he was in the barn. Lawanda ran to the telephone and called 911. Lawanda then finished untying Stephan, grabbed a gun and went out to the barn. She found Charles on the floor in the middle of the barn. Upon touching him, she discovered that his body was cold. Charles had been shot twice in the head, once behind his right ear and once under his chin. It was determined that the

weapon used was a Ruger semi-automatic .22 caliber pistol.

Law enforcement officers began to arrive at the crime scene at about 12:45 a.m. Stephan told Deputy Sheriff Lloyd Hope that he had been down at the horse shed with his father checking on a recently born horse when his father went to the house. Stephan claimed that a man grabbed him and pulled him into a room in the shed, the tack room, and taped his mouth shut. He heard his father say "Who are you?" and then heard two gunshots. Stephan estimated that the attack occurred about 8:30 p.m. Sergeant Boyd L. Denton, a Missouri Highway Patrol officer, also spoke to Stephan. Stephan told Sergeant Boyd that at approximately 8:30 p.m., as he was down at the barn, two men jumped him. He also told the officer that he had seen an older, gray car parked at the north entrance to the building in a lightly graveled driveway. Sergeant Denton checked the area, but found no tracks or traces that a car had been there.

Mrs. Mason signed a consent to search and allowed a search of her home. When asked whether there were any small caliber weapons in the home, Mrs. Mason produced four .22 caliber weapons, a .357 Magnum, a .44 caliber weapon and a .44 Magnum. One of the .22 caliber weapons was the murder weapon, a Ruger semiautomatic .22 caliber pistol. Gunshot residue tests were performed upon Mrs. Mason, Stephan and on the body of the victim. The samples taken from Stephan were collected at approximately 4:00 a.m.

Mrs. Mason and the victim tested negative. Elevated levels of antimony and barium were found on Stephan's right palm. The left palm was also above threshold levels. On the back of the right hand, was an elevated level of antimony, but the barium was not up to the threshold level. On the back of the left hand, the levels of both antimony and barium were above the threshold levels. A conclusion about whether Stephan had fired a gun could not be reached, however, because the samples were collected later than six hours from the time of the shooting. Trooper Donald Tyes of the Missouri Highway Patrol was asked to transport Stephan to

Troop H. Stephan asked Trooper Tyes whether handling bottle rockets would leave gunshot residue on his hands. Stephan said he had been handling bottle rockets on the morning of March 15, before he went to school.

On March 17, 1993, a search warrant was executed. During their search, officers found Charles Mason's billfold in the pocket of a vest hanging in Stephan's closet. The wallet contained $1,300.00. The next day, on March 18, Stephan, who was in the Andrew County Jail, indicated that he wanted to talk to the officers. Stephan was read his *Miranda*[1] rights and signed a written waiver. In this version of the murder, Stephan claimed that his natural father, Bill Stephan, and another man committed the murder. The other alleged assailant, described by Stephan only as a black man, took him to the tack room and bound him. Bill Stephan warned Stephan that he would be back if Stephan so much as mentioned his name. After the officers indicated that they did not believe this story, Stephan came up with a brand new story. In this version, a guy named Josh and a "kid who dropped out of school" committed the murder in order to get Charles Mason's billfold. Somehow, after the murder, Stephan pushed Josh and the gun went off, presumably leaving antimony and barium on his hands. Stephan saw the billfold on the ground so he picked it up, ran into the house and put it in his vest. Stephan then found the keys to the Probe and drove off to go cruising with his friends. When he returned home, Josh and the dropout were still there and they bound him up with rope and tape.

Stephan went to trial for the murder of his stepfather. He did not testify. The jury returned a verdict of guilty and the trial court sentenced Stephan to life imprisonment without the possibility of probation or parole.

On May 22, 1995, Stephan filed a Rule 29.15 motion for post-conviction relief. An amended motion was filed on July 31, 1995.

An evidentiary hearing on the motion was held on November 16 and November 28, 1995. On December 29, 1995 the motion court filed its findings of fact and conclusions of law, denying the motion. Stephan appeals both his conviction and the denial of his motion.

## RELEVANCY OF RESIDUE TESTS

In Point I, Stephan contends that the trial court abused its discretion in allowing evidence as to the gunshot residue found upon his hands because too much time had passed between the shooting and the test for conclusions to be drawn. Stephan claims that this evidence was highly prejudicial. As proof of its prejudicial effect, Stephan claims that a juror told defense counsel, after the verdict, that he found it the "most compelling piece of evidence introduced."[2]

Jenny Smith, a forensic chemist with the Missouri State Highway Patrol, testified, over a continuing objection made by the defense, that there were high levels of antimony and barium on all four of the swabs taken from Stephan when he was tested for gunshot residue. The levels were above what was normally considered significant, with only one of the samples slightly below the cut-off value. The right palm, the left palm, and the back of the left hand all showed levels of antimony and barium beyond the threshold level. The back of the right hand showed an elevated level of antimony but the barium was not quite up to the threshold level. Smith testified, however, that despite the significant levels of antimony and barium, she could reach no conclusion as to whether Stephan had fired a firearm. The lapse of time between the shooting and the collection of the sample would, however, affect the level of the samples. The samples taken from Stephan were taken after six and one-half hours had elapsed.

The trial court enjoys broad discretion over issues of the admissibility and the

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. This argument is improper. Jurors speak only through the verdict they reach. *State v. Taylor*, 917 S.W.2d 222, 225 (Mo.App.1996). "They can-

not speak of any partiality or misconduct that transpired in the jury room nor of the motives which induced or operated to produce the verdict." *Id.*

relevancy of evidence. *State v. Tokar*, 918 S.W.2d 753, 770 (Mo. banc), *cert. denied,* — U.S. —, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). The trial court's decision on these matters will not be disturbed unless a clear showing can be made that it abused that discretion. *Id.* For evidence to be admissible it must be relevant. *State v. Weaver*, 912 S.W.2d 499, 510 (Mo. banc 1995), *cert. denied,* — U.S. —, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). Relevant evidence is evidence that logically tends to prove a fact that is at issue or that corroborates relevant evidence bearing on the principal issue. *Id.* We see no abuse of discretion in the admission of the results of the gunshot residue test. Evidence of the test was admissible to offer an explanation as to why Stephan kept coming up with different reasons why his hands might have gunshot residue. After Stephan was tested, he presented stories about various things that might have affected the test. The varying explanations for the possibility that something might be found on his hands—the statement about firing bottlerockets, about hitting the gun in a struggle with Josh and the unknown dropout (one version of Stephan's explanation for events occurring on the night of the murder), and about soldering on the day of the murder—were admissible as evidence of his consciousness of guilt. Having introduced the fact that a gunshot residue test was performed on Stephan at 4:00 a.m. on the morning following the shooting, the state was entitled to introduce the results of the test, even though the results were inconclusive. Point I is denied.

## EXPERT OPINION TESTIMONY

In Point II, Stephan complains that the trial court erred in sustaining the State's objection to the proposed testimony given by Stephan's expert witness, David Sandy. Sandy is a magician and "escapologist" who was prepared to testify that Stephan could not have tied himself up with the ropes and duct tape. The State filed a motion in limine seeking to prevent this testimony. In pretrial proceedings, the trial court heard an offer of proof on the subject. When asked as to what opinion he arrived at, Sandy testified that he had tried to tie himself up the way that Stephan was tied up (as it was described to him by Mrs. Mason) and could not do it. Although Mrs. Mason described the knots to Sandy, she was uncertain of many of the details and could not tell him where all the knots were located. In ruling on the motion, the trial court found that the jury was capable of drawing its own conclusions from the evidence it would hear and thus the issue was not a proper subject for expert testimony.

When Sandy was called to testify, the State renewed its objections to any testimony on the subject matter of the State's motion in limine. Defense counsel replied that the State did not need to remind him that the Court had excluded his opinion testimony. And, although Sandy did testify at Stephan's trial, the defense never sought permission to introduce testimony concerning Sandy's opinion as to whether Stephan could have tied himself up or not. The defense also never asked the court to reconsider its ruling as to the admissibility of the evidence.

A trial court's ruling on a motion in limine is interlocutory in nature and is, therefore, subject to change in the course of a trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). In and of itself, a motion in limine preserves nothing for review. *Id.* The trial court's action of sustaining the pretrial motion in limine does not act as an automatic, permanent bar to the evidence sought to be excluded. *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982). The proponent of the evidence "must attempt to present the excluded evidence at trial." *Purlee*, 839 S.W.2d at 592. This gives the trial court an opportunity to alter its pretrial ruling and admit the evidence. *Evans*, 639 S.W.2d at 822. Stephan cites *State v. Taylor*, 929 S.W.2d 925 (Mo.App.1996), for the proposition that the offer of the evidence is not necessary to preserve the issue for appeal. In *Taylor*, the Southern District was concerned that the trial court might have been offended had the defense attempted to introduce evidence that had been ruled inadmissible just before the witness testified. *Id.* at 927. In this case, the court's interlocutory ruling was before trial. At trial, defense counsel indicated that he did not intend to present the evidence at issue. There were

no unusual or extraordinary circumstances that would have prevented the offer of the evidence and counsel made no move to introduce it or argue against its exclusion. Stephan's failure to offer the evidence in question at trial leaves this court with nothing to review. Point denied.

## VICTIM'S ALLEGED STATEMENT

 In Point III, Stephan argues that the trial court erred by overruling his motion for new trial and that the motion court erred by denying his Rule 29.15 motion for post-conviction relief because the State withheld exculpatory information from the defense. Stephan claims that Phillip Mason, the son of Charles Mason, the victim, told the State that Charles Mason had told him, out of the blue, that, "I think those two youngest boys [Billy Stephen and the defendant-appellant Dale Stephan] are going to try to kill me." Defense counsel attached an affidavit from Phillip Mason to this effect to a motion for new trial but presented no evidence at the hearing on the motion. In his Rule 29.15 motion, Stephan claims that defense counsel was ineffective for failing to present any evidence to support the claim. Stephan cites *State v. Bebee*, 577 S.W.2d 658, 661 (Mo.App. 1979), for the proposition that the State has an affirmative duty to disclose exculpatory evidence.

In ruling on the motion for new trial, the trial court stated:

Now, as to the last point concerning a matter which was not previously addressed; a purported statement made by the victim to his son prior to his death. There certainly is a dispute of fact as to what statement was made and when. If that dispute of fact was necessary to be resolved to rule on this motion, the Court would open that aspect of the motion for additional evidence. However, even assuming the affidavit as filed by the defendant concerning the content of the statement and the time of the statement is true, which the Court is not finding, but is assuming for purposes of ruling on this motion, the Court finds that that does not raise a basis for the granting of a new trial

and does not result, did not result in the defendant not receiving a fair trial.

First of all, the statement made, purportedly made, was not exculpatory but was inculpatory concerning the defendant's involvement. It did mention the possibility—or not even the possibility, it did raise some concern on behalf of the victim, the decedent, not only concerning this defendant, but someone else, his brother apparently. However, the statement purportedly made by the decedent contains no reason, no factual basis for his concern, it is purely speculation, raises speculation on the part of the decedent as to why he was concerned about the two youngest boys, as the affidavit states, and presents no evidence that anyone else could have committed the offense. Because Missouri law is clear that it is improper to present evidence that some person other than the defendant had an opportunity or motive to commit the crime charged without proof that the other person did some act directly connecting him with the commission of the crime.

The statement was hearsay and would not have been admissible in evidence and, the Court finds, would not have any impact on the direction of the defendant's preparation, since throughout the investigation and preparation of this case for trial, defendant's counsel focused on the possibility that others in the defendant's family may have had some involvement in the offense. Therefore, having knowledge of this purported statement would not have had any likely impact on the preparation or presentation of evidence in this case.

And even if this had been an exculpatory statement or evidence of an exculpatory nature, that does not automatically grant the defendant a new trial. Because the criteria there, even under those circumstances, is whether there would be any reasonable likelihood that the outcome of the trial would have been affected from the nondisclosure. And as the Court has already recited, there is no evidence before this Court that there would be any reasonable likelihood that the outcome of the trial

would have been affected had this statement been relayed to defense counsel.

The trial court did not err in overruling Stephan's motion for a new trial. There was no evidence before the court for it to consider. The affidavit attached to the motion was not evidence. Absent a stipulation from the parties, there is no authority to treat an affidavit as evidence and make a determination upon it. *State v. Stillings*, 882 S.W.2d 696, 701 (Mo.App.1994). In any event, the prosecution would not have had any reason to consider the statement exculpatory, nor to think that Stephan would have been particularly interested in it for defense purposes.

The motion court did not err in denying Stephan's motion. Counsel was not ineffective for failing to present evidence in connection with the victim's alleged statement made to his son. Even, assuming for the sake of argument, that the statement was made, it provides no basis for relief as Stephan cannot demonstrate prejudice. Even if the statement was found not to be inadmissible hearsay, the statement would not be admissible to prove that Billy Stephan committed the murder. Evidence that merely casts "bare suspicion" is not admissible. *State v. Schaal*, 806 S.W.2d 659, 669 (Mo. banc 1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992). Because the evidence would have been inadmissible, defense counsel's failure to produce evidence on the issue did not cause any prejudice. *Id.* Stephan also fails to explain how the defense would have altered its strategy. Stephan's defense was that someone else committed the murder. Stephan never denied being present at the scene. The one consistent thread throughout Stephan's accounts of the murder was that he was present. Billy's hypothetical involvement would therefore be of no particular assistance to Stephan. It is not as if Stephan were uncommunicative about the events that night. Rather, his accounts varied wildly. The statement was consistent with the State's theory that Stephan was the murderer. Point III is denied.

## DEFENDANT'S RIGHT TO TESTIFY

■ In Point IV, Stephan challenges the motion court's denial of his Rule 29.15 motion for post-conviction relief because he claims that trial counsel failed to allow Stephan to testify, and failed to explain to Stephan that he was entitled to make the decision. Stephan claims that he wanted to testify and, had the jury heard his testimony, there is a reasonable probability that the outcome of the case would have been different and that he would have been acquitted. In his Rule 29.15 motion, Stephan states that he would have testified that he and his step-father were welding on the day of the murder, thus accounting for the traces of barium and antimony found upon Stephan's hands. Stephan also claims in the motion that his testimony would have been consistent with the defense theory that individuals other than he were involved in the murder.

The motion court made the following findings on the issue of Stephan's claim that he was not allowed to testify:

> e. A defendant in a criminal case has the right to decide for himself whether to take the stand to testify. *Brown v. State*, 882 S.W.2d 154, 156 (Mo.App. E.D.1994). A motion court is not required to believe a movant's testimony at an evidentiary hearing and the appellate court is to give deference to the motion court's determination of appellant's credibility. *State v. Bailey*, 839 S.W.2d 657, 662 (Mo.App. W.D.1992); *State v. Twenter*, 818 S.W.2d 628, 635[8] (Mo. banc 1991).

> 9. Movant's trial counsels both testified at the hearing that they were aware that movant had been counseled about his right to testify by one or more of them and the positive and negative effects his testifying could have on his case. The defendant was aware of his right to testify and knowledgeably and voluntarily waived that right in deference to his attorney's advice. Trial counsel's advice against the defendant testifying and movant's choice not to testify were based upon sound trial strategy in view of all of movant's conflicting versions of the events on the night of the murder.

> 10. The PCR hearing evidence fails to establish that the movant advised trial counsel that he wanted to testify after he was advised not to testify by counsel.

Further, there is no evidence that movant related to trial counsel what he would say even if he did testify. Although movant obviously considered testifying at some point during the trial after discussing the pros and cons with trial counsel, the Court finds that the reasonable inferences from the credible evidence clearly show that movant deferred to trial counsel's advice on the subject and voluntarily waived his right to take the stand for his own benefit. There was no evidence presented at the PCR hearing that movant's latest version was even available to trial counsel to present at trial had movant chosen to testify and this court finds that it was not.

11. This Court finds from its close observation of movant during his testimony at the PCR hearing that movant was not telling the truth when he testified that he told his attorney that he wanted to take the stand during the trial and that his attorney would not allow him to do so. This Court also finds that movant was not telling the truth as he related his latest version of what took place on the night of the murder. Movant's testimony during the post conviction hearing was not credible or worthy of belief.

■ Our review is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995). The motion court's findings and conclusions will be deemed clearly erroneous only when, if after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake was made. *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995).

In establishing ineffective assistance of counsel, movant must satisfy a two-prong test, showing: (1) that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) that defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Prejudice is established where it is shown that but for counsel's errors, the outcome of the proceeding would have been different.

*State v. Tokar,* 918 S.W.2d at 761. There is a presumption that counsel performed effectively; the movant assumes a heavy burden in attempting to overcome this strong presumption by a preponderance of the evidence. *Id.* "The benchmark for judging ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *State v. Graham,* 906 S.W.2d 771, 784 (Mo.App.1995).

■ Deference is given the motion court's superior opportunity to judge the credibility of witnesses. *State v. Silas,* 885 S.W.2d 716, 722 (Mo.App.1994). The motion court found that Stephan's claim was not credible and not worthy of relief. We defer to the motion court on this matter. Point IV is denied.

## FAILURE TO PRESENT WITNESS

■ In Point V, Stephan claims that the motion court erred in denying his Rule 29.15 motion because trial counsel was ineffective by failing to call witnesses who would have incriminated Lawanda Mason and Billy Stephan. The motion court found:

14. Movant alleges in 12e, h, and n that counsel was ineffective for failing to call witnesses at trial. A decision to call a witness is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. *Odom v. State,* 783 S.W.2d 486, 487–488 (Mo.App. W.D.1990). It is trial counsel's decision to call a witness and it is apparent from counsel's testimony that, with the exception of Jany Rhinehart, counsel knew of these witnesses and had investigators talk to them prior to trial. This court finds that the witnesses that testified for the first time at the PCR hearing had no relevant evidence to present at trial and their testimony could not have been persuasive at trial regarding movant's guilt. Their testimony would only have furthered movant's attempt to raise speculation and suspicion as to the involvement of individuals other than himself without laying the necessary foundation showing anyone besides himself was connected with the murder and that

anyone besides himself was clearly pointed out as the guilty party. *State v. Stevenson,* 852 S.W.2d 858 (Mo.App.1993); citing *State v. Umfrees,* 433 S.W.2d 284 (Mo. banc 1968). Movant only places Billy Stephan and Lawanda Mason at the scene through his PCR hearing testimony which this Court finds is not worthy of belief. Movant's incredible, self-serving testimony is insufficient to meet his burden of proof. *State v. Buchanan,* 836 S.W.2d 90, 93 (Mo. App. W.D.1992). There is no evidence that trial counsel even knew of movant's present version of the murder of Mr. Mason and this Court finds that it was not available at the time but has since been fabricated by movant.

Movant has not proven how these witnesses' testimony would have been admissible if they had testified nor has he shown that their testimony would have provided him with a "viable defense." *State v. Vinson,* 800 S.W.2d 444, 448–449 (Mo. banc 1990). Movant was not prejudiced by these witnesses not testifying.

■ In order to prevail upon a claim of ineffective assistance of counsel for failure to call a witness, Stephan must show (1) that trial counsel knew or should have known of the existence of the witness; (2) that the witness could be located through reasonable investigation; (3) that the witness would testify; and (4) that the testimony of the witness would have produced a viable defense. *State v. Harris,* 870 S.W.2d 798, 817 (Mo. banc), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Choice of witnesses is a matter of trial strategy. *Id.* at 816. The decision to call a witness, if that witness would not unqualifiedly support the defense, is a matter of trial strategy and will not support a finding that counsel was ineffective. *State v. Johnson,* 901 S.W.2d 60, 63 (Mo. banc 1995). The record supports the motion court's findings. Counsel investigated the witnesses prior to trial. The testimony given by the witnesses at the hearing on the 29.15 motion is a blatant attempt to cast suspicion elsewhere without laying the necessary foundation—evidence that directly connected another with the crime. *See State v. Storey,* 901 S.W.2d 886, 900 (Mo. banc 1995); *State v. Wise,* 879 S.W.2d 494, 510 (Mo. banc

1994), *cert. denied,* 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). No evidence was presented at trial that connected either Billy or Lawanda with the crime. Point is denied.

**FINGERPRINT COMPARISON**

■ In Point VI, Stephan claims that the motion court clearly erred and abused its discretion in denying his motion for the disclosure of Billy Stephan's fingerprints to motion counsel. He claims that the fingerprints were necessary for a determination of the issues in the 29.15 hearing where he bore the burden of proof. He also claims, in Point V, that trial counsel was ineffective for failing to request that Billy's fingerprints be compared to an unknown print on the duct tape. The motion court found:

15. Movant alleges in point 12f that trial counsel was ineffective for failing to file a motion with the court to order that Billy Stephan's fingerprints be compared to the unidentified prints found on the tape which was used to secure movant on the night of March 15, 1995. Movant presented the testimony of two experts on fingerprint forensics regarding the quality of the latent prints found on the duct tape and the ability to identify the prints by comparison to other prints. Sarita Lang testified for movant that the original latent prints were not very good prints. The prints were of poor quality. Ms. Lang could not say that the prints were or were not made by movant or Lawanda Mason. Movant then called a Mr. Mettenberg who indicated that three photographed latent fingerprints "could be" identified with two of the prints being in the category of "doubtful" as to identification.

Even assuming that a latent fingerprint on the duct tape could be identified as belonging to Billy Stephan, there was no evidentiary foundation at trial that Billy Stephan was present at the scene at the time of the murder and committed any act in furtherance of the murder of Charles Mason. Movant's incredible post conviction relief testimony is not sufficient to lay this foundation, as noted above. At trial, the best movant could have hoped for was

to show the jury that Billy Stephan had at one time handled the duct tape. Based on movant's prior statements and the lack of credible evidence regarding Billy Stephan's involvement, movant is not prejudiced by defense counsel's failure to make such a motion.

The motion court did not err in denying Stephan's motion for the disclosure of Billy Stephan's fingerprints to motion counsel, nor was trial counsel ineffective for failing to request that Billy's fingerprints be compared to an unknown print on the duct tape. There is no direct evidence at all linking Billy to the scene of the crime. Moreover, even had the motion court felt inclined to grant Stephan's motion, and if a comparison had revealed Billy's fingerprint was on the tape, it would have done no more than raise the possibility of Billy's involvement as an accomplice. Thus, evidence of the fingerprint alone would not have entitled Stephan to a new trial. Points are denied.

## NEWLY DISCOVERED EVIDENCE

██ In his final point, Stephan claims that the motion court erred in denying his Rule 29.15 motion for post-conviction relief in that newly discovered evidence presented at the motion hearing impacted on the question of Stephan's innocence and mandated the vacating of his conviction and remand for new trial or a further new trial motion and hearing thereon. This newly discovered evidence that Stephan pins his hopes on consists of the testimony of Billy's old girlfriend, Jany Rhinehart, that Billy told her after Stephan's trial that Stephan was in prison for something that Billy and Mrs. Mason did. Claims of newly discovered evidence are not cognizable in a Rule 29.15 proceeding. *Wilson v. State*, 813 S.W.2d 833, 834–35 (Mo. banc 1991); *State v. Cummings*, 838 S.W.2d 4, 7 (Mo.App.1992). In any event, the trial court found that Jany Rhinehart's testimony lacked credibility. Further, there was no showing as to why this testimony could not have been discovered earlier. Nor, in view of the strength of the evidence against Stephan, was there any showing as to how such evidence would have affected the result of the trial. Point is denied.

The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

All concur.